[S. F. No. 9139. In Bank.—October 24, 1919.]

## LONDON GUARANTEE AND ACCIDENT COMPANY, LIMITED (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] Divorce—Interlocutory Decree—Effect of.—An interlocutory judgment of divorce is, so far as it determines the rights of the parties, a contract between them, and while it is temporary and provisional in its nature, it settles the rights of the parties for the time being and until some action, proceeding, or motion is begun to change the status and some order is made thereon which has that effect, or until they become reconciled and resume marital relations, in which event their mutual obligations are, for the time being at least, restored.

[2] Id.—Silence of Interlocutory Decree as to Wife's Support—Suspension of Liability of Husband.—Where an interlocutory judgment of divorce makes no provision for the wife's support, the husband and wife are living separate by an agreement which does not provide for her support, and under section 175 of the Civil Code, the husband is not, during the interval between the interlocutory and final judgment, personally liable for her support, and until that contract is in some manner changed, either in the action or in some independent proceeding, or by a reconciliation, her right to support is suspended.

[3] Workmen's Compensation Act — Death of Husband — Prior Interlocutory Judgment of Divorce—Wife not Entitled to Compensation.—Under the Workmen's Compensation Act (Stats. 1917, p. 845), a wife who was not living with her husband at the time he received injuries causing his death, and who had obtained an interlocutory judgment of divorce upon a complaint which alleged a cause of action for willful neglect and did not ask for alimony or any other provision for her support, and which judgment made no such provision and contained no reservation of jurisdiction to award any alimony or maintenance, is not entitled to compensation for his death, since at the time of such death he was not legally liable for her support.

PROCEEDING in Certiorari to annul an award of the Industrial Accident Commission. Annulled.

The facts are stated in the opinion of the court.

Walter H. Linforth for Petitioner.

A. E. Graupner and Clarence A. Henning for Respondents.

SHAW, J.—This is an application to review a decision of the Industrial Accident Commission awarding compensation to Eva Oberg and Mary Oberg on account of the death of John M. Oberg, who at the time of his death was the husband of Eva Oberg.  Mary Oberg was the mother of said John M. Oberg.  It is admitted that the injuries which caused the death of John M. Oberg were caused by accident arising out of and in the course of his employment.  The only questions for consideration relate to the amount of compensation to be awarded and the rights of the beneficiaries to receive the same.

The injury occurred on November 30, 1918.  Oberg and his wife at that time had not been living together for nearly two years.  In December, 1917, Eva Oberg began an action for divorce against John M. Oberg, alleging in the complaint as cause for divorce the willful failure of said Oberg to provide her with the common necessaries of life for more than a year prior to the beginning of the action.  The complaint did not ask alimony or other provision for her support or for an award of property.  Oberg was a nonresident of the state and summons was served by publication only.  In that action, on April 16, 1918, she obtained an interlocutory judgment of divorce, declaring that she was entitled to a divorce from said John M. Oberg on the ground stated in the complaint.  It made no provision whatever for any alimony or maintenance and no reservation of any right or power thereafter to award alimony or maintenance or to entertain any application therefor.  This judgment became final, in the sense that no appeal could be taken therefrom, on June 16, 1918.  Mary Oberg, the mother of John M. Oberg, had been receiving financial aid from John M. Oberg prior to his death.  His contributions to her for the year preceding his death did not exceed $125.  The commission found that Eva Oberg was the wife of John M. Oberg at the time of his death and that he was legally liable for her support; that Mary Oberg was partially dependent on him for support at the time of his death, and thereupon it awarded full death benefits and, as it is authorized to do by subdivision "e" of section 14 of the Workmen's Compensation Act (Stats. 1917, p. 845), reassigned the same by giving one-half of the amount to the mother and the other half to the wife.

It is the contention of the petitioner that said John M. Oberg was not legally liable for the support of said wife at the time of his death, and consequently that full compensation could not be awarded and subsequently reassigned in the manner stated, but that the only allowance that could be made under the provisions of the section was one hundred dollars for burial expenses and an additional sum to the mother, as a death benefit, not exceeding three times the annual amount devoted to the support of said mother by said deceased in his lifetime and not exceeding the equivalent of three times his average annual earnings, as provided in section 9, subdivision c (2) of the Workmen's Compensation Act. (Stats. 1917, p. 840.) This contention would be correct, if the wife be not legally entitled to compensation under the act.

The act provides that if the wife was living with the husband at the time of his death, or if he "was legally liable at the time of his death" for her support, she is "conclusively presumed to be wholly dependent for support" upon her husband, so as to be entitled to compensation under the act as such dependent. (Sec. 14, subd. [a] [1].) The commission was of the opinion that, under the circumstances above narrated, and notwithstanding the entry of the interlocutory decree of divorce between Eva Oberg and her said husband, he was legally liable for her support at the time of his death. The correctness of this conclusion is the question to be considered in the case.

The question depends mainly upon the meaning and effect of sections 131 and 132 of the Civil Code. The provisions of these sections, applicable to this case, are that in an action for divorce, if the court determines that a divorce should be granted, "an interlocutory judgment must be entered, declaring that the party in whose favor the court decides is entitled to a divorce" (section 131) ; and that after the lapse of one year from the entry of such interlocutory judgment the court "may enter the final judgment granting the divorce, and such final judgment shall restore them to the status of single persons," and that the court may then give "such other and further relief as may be necessary to complete disposition of the action." (Section 132.)

The petitioner claims that where the complaint in such action does not ask for alimony, support, or maintenance, nor for any relief regarding property and the interlocutory judg-

ment does not reserve the questions of alimony, support, or disposition of property for further consideration, the right of the wife to demand subsequent support from the husband is terminated by the interlocutory judgment and that he is thereby relieved from the obligation to support her during the interval between the interlocutory judgment and the final judgment. In support of this claim it cites *Howell* v. *Howell,* 104 Cal. 45, [43 Am. St. Rep. 70, 37 Pac. 770], *O'Brien* v. *O'Brien,* 124 Cal. 422, [57 Pac. 225], *McKay* v. *McKay,* 125 Cal. 68, [57 Pac. 677], *O'Brien* v. *O'Brien,* 130 Cal. 409, [62 Pac. 598], and *Harlan* v. *Harlan,* 154 Cal. 348, [98 Pac. 32]. These decisions all related to the effect of final judgments which made no provision for future alimony or support and did not reserve that subject for subsequent disposition. They are put upon the ground that inasmuch as the court in those cases had rendered final judgment without reserving the question of support or alimony for further consideration and such judgment had become final in that court, it had lost jurisdiction over the action, and that as the final judgment dissolved the marriage absolutely, the woman was no longer his wife and the personal liability of the husband for her subsequent support had ceased to exist, and that all her former rights to support from him had become merged in the judgment. The interlocutory judgment is provisional or temporary, only, by the terms of the statute, and does not of itself dissolve the marriage relation, and therefore these reasons do not apply.

We have considered the effect of sections 131 and 132 in *Deyoe* v. *Superior Court,* 140 Cal. 476, [98 Am. St. Rep. 73, 74 Pac. 28], *Periera* v. *Periera,* 156 Cal. 9, [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488], *Estate of Dargie,* 162 Cal. 51, [121 Pac. 320], *Estate of Seiler,* 164 Cal. 181, [Ann. Cas. 1914B, 1093, 128 Pac. 334], *Estate of Walker,* 169 Cal. 403, [146 Pac. 686], and *Brown* v. *Brown,* 170 Cal. 1, [147 Pac. 1168]. The principal proposition established by these cases is that the marriage relation is not dissolved by the interlocutory judgment and that for all the purposes involved in those cases it remained in existence until the final judgment of divorce. Neither the Periera case nor the Deyoe case contained anything concerning the liability of the husband for support after the interlocutory judgment. In *Estate of Dargie* the parties had become reconciled after the inter-

locutory judgment and were living together as husband and wife at the death of the husband, but the interlocutory judgment had not been set aside. It was held that the marriage relation was not dissolved and that she was entitled to the benefit of the provisions of the Code of Civil Procedure declaring a surviving wife entitled to a family allowance out of the estate of the husband. In *Estate of Seiler* and *Estate of Walker* it was held that when the husband died after the interlocutory judgment the surviving wife was his widow and was entitled to administration upon his estate, under the provisions of section 1365 of the Code of Civil Procedure. In *Brown* v. *Brown* the interlocutory divorce had been granted to the wife on the default of her husband upon a complaint for divorce on the ground of willful neglect and which alleged that there was no community property at the time the action was begun. During the interval between the interlocutory judgment and the final judgment the husband acquired community property, and after the final judgment the wife began the action to establish her title as tenant in common with him in such property. It was held that the final judgment upon such a complaint and default was a determination that there was no community property in existence at the time the action was begun, but that it did not conclude the wife with respect to the subsequent acquisition of property by the husband, and that she was entitled to show such acquisition and to claim her share thereof after the final judgment had been rendered. The case went upon the theory that the judgment had left the after-acquired community property undisposed of and that they therefore became tenants in common thereof, each holding a half interest. (*De Godey* v. *De Godey*, 39 Cal. 162.) The divorce was not granted upon either the ground of cruelty or adultery. The decision holds that the statute declaring what shall constitute community property continues applicable after the interlocutory judgment and until the final judgment, unless the interlocutory judgment in some manner adjudicates the matter.

These decisions do not reach the point presented in the case now in hand. This case presents the question whether section 155 of the Civil Code, declaring that the husband and wife contract toward each other obligations of mutual support, continues in existence notwithstanding the rendition of an interlocutory judgment rendered upon a complaint by the wife

which alleges a cause of divorce against the husband for willful neglect and does not ask alimony or any other provision for her support. Certain other provisions of the Civil Code are important. Section 159 declares that the husband and wife "may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation." Section 175 provides that he is not liable for her support if she abandons him without cause, until she offers to return, "nor is he liable for her support when she is living separate from him, by agreement, unless such support is stipulated in the agreement." Here the husband and wife had been living separate and apart for nearly two years prior to his death and for about a year prior to the time when she began the action for divorce. The wife began the action asking for a divorce and seeking no relief whatever from him for her support. This was, in effect, a waiver by her, for the purposes of the action, of her right to support from him, at least until such time as she should apply therein for some order to enforce such obligation. To this complaint he made no answer and suffered the interlocutory judgment to be taken against him by default. This was equivalent to a consent on his part that she should have the divorce as prayed for upon the allegations of her complaint. It is said that "a judgment is a contract, in the highest sense of the term." (*Wallace* v. *Eldredge,* 27 Cal. 499.) This is well settled in this state. (*Stuart* v. *Lander,* 16 Cal. 372, [76 Am. Dec. 538] ; *Bean* v. *Loryea,* 81 Cal. 153, [22 Pac. 513] ; *Dore* v. *Thornburgh,* 90 Cal. 66, [25 Am. St. Rep. 100, 27 Pac. 30] ; *Weaver* v. *San Francisco,* 146 Cal. 732, [81 Pac. 119].) **[1]** An interlocutory judgment of divorce is, therefore, so far as it determines the rights of the parties, a contract between them. It is temporary and provisional in its nature, it is true, but it settles the rights of the parties for the time being and until some action, proceeding, or motion is begun to change the status and some order is made thereon which has that effect, or until they become reconciled and resume marital relations, in which event their mutual obligations are, for the time being at least, restored. (*Olson* v. *Superior Court,* 175 Cal. 250, [1 A. L. R. 1589, 165 Pac. 706].) The following passage from *Brown* v. *Brown, supra,* although it refers to a final judgment, is applicable also to an interlocutory judgment so far as it declares the same to be a contract. "Where a defendant is

CLXXXI Cal.—30

served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint. The proceeding is equivalent to a statement by Brown to plaintiff that he did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun. When judgment is rendered upon such a complaint and default, it becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief." So in the present case, the interlocutory judgment, although not final, was conclusive between the parties for the purposes of that action during the period elapsing before the final judgment should be entered, unless by some proceeding or agreement it became in some manner modified. Perhaps the wife would have had the right during that interval to apply in that action for further relief in the way of support and maintenance or for alimony, but until she did so the rights of each with respect to the personal marital obligations of the other remained as declared by the interlocutory judgment and it was binding on each of them. It is true it had no effect on the operation of the statutes which declare her rights in the property of which he dies possessed nor upon the statutes declaring the status of the property acquired by him during the marriage, because, until the final judgment, the marriage status continues. But the personal obligations between them remain in abeyance until changed by some subsequent action or agreement which is binding upon the husband. [2] They are, by virtue of the interlocutory judgment, living separate by agreement, and if that judgment makes no provision for her support by him, they are living separate by an agreement which does not provide for her support, and under section 175 he is

not, during that interval, personally liable for her support. The judgment has the effect of a contract for that purpose. Until that contract is in some manner changed, either in the action or in some independent proceeding, or by a reconciliation, her right to support is suspended. In the present case no change was made in their status up to the time of his death. They were living apart under this contract evidenced by this judgment. He was not at that time legally liable for her support and, therefore, she does not come within the aforesaid provisions of the Workmen's Compensation Act. [3] It follows that the award cannot be sustained. It will be necessary for the commission to readjust the matter under the principles we have stated, giving the wife no compensation whatever and allowing the mother such compensation as the evidence may show she is entitled to under the provisions of the act.

The award is annulled and the cause remanded for further proceedings.

Angellotti, C. J., Olney, J., Wilbur, J., Lennon, J., Lawlor, J., and Melvin, J., concurred.

Rehearing denied.

All the Justices concurred.