[Civ. No. 3373. Third Appellate District.—January 26, 1928.]

A. E. BOULENGER, Appellant, v. D. MORISON, etc., Respondent.

Robert F. Shippee, Henry I. Brouillette, Brouillette & Shippee and J. M. Stevens for Appellant.

Duke Stone for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by plaintiff A. E. Boulenger from a judgment rendered against him in an action wherein he sought to enforce specific performance of a contract for the sale of real estate.

The facts are briefly these: On October 8, 1923, Donald Morison and his wife, Catherine Elizabeth Morison, owned certain real estate in the city of Los Angeles, which was community property. "Terry & Company" were real estate brokers and are the successors of another real estate firm known as "Wheeler & Terry," and were operating in Los Angeles. The plaintiff A. E. Boulenger is the father-in-law of Terry, but appears to have no connection with the firm of Terry & Company, other than hereinafter mentioned. On the said eighth day of October, 1923, Donald Morison gave Wheeler & Terry an exclusive right and option to sell the property in question at any time within thirty days for the sum of $30,000, out of which Wheeler & Terry were to receive $1,000 as commission for making the sale.

The plaintiff contends that he purchased the property from Terry & Company under this option on October 8, 1923, for the sum of $30,000, and paid Terry & Company a deposit thereon of $200. The defendant contends, and the court found upon conflicting evidence, that nothing was done under the option until October 12, 1923, when a Mrs. Ransdell entered into an agreement with Terry & Company, the successors of Wheeler & Terry, by which she was to buy the property in question for $35,000, and made a deposit of $200 thereon. Mrs. Ransdell testified that Terry & Company had told her that they thought they could get the owner to sell for $35,000; "that he was an old sick man living in Hollywood." The person referred to was shown to be Mr. Morison. At that time it must be remembered that the plaintiff Boulenger was claiming to be the owner of the same property, through purchase from Terry & Company on October 8, 1923. On October 13, 1923, the next day after the agreement with Mrs. Ransdell, Mr. Fellows, the admitted agent and representative of Terry & Company, went to the residence of Mr. Morison and procured his signature to an agreement dated *October 12, 1923,* wherein Morison agreed to sell to plaintiff the property in question for $30,000, and agreed to pay Terry & Company $1,000 commission. On October 15, 1923, Morison placed in escrow with the bank, in conformity with the contract, deeds executed by himself and wife to the plaintiff, with certain escrow instructions. The plaintiff also filed with the bank his escrow instructions. After this was done, and on the 17th of October, one Schleyn offered Terry & Company $36,000 for the property, whereupon Terry & Company returned to Mrs. Ransdell her deposit of $200, and wrote her a letter in part as follows: "We regret very much that we were unable to get the owner to accept your offer of $35,000. . . . " Upon receipt of this letter Mrs. Ransdell called upon Mr. Morison and informed him of her negotiations with Terry & Company for the property. This was the first information Mr. Morison had received as to the negotiations carried on by Terry & Company with Mrs. Ransdell and Mr. Schleyn.

After the agreement of sale, deed and instructions had been placed in escrow, and before receiving the call from Mrs. Ransdell, a controversy arose between Morison and plaintiff relative to the title and certain setbacks and re-

strictions affecting the property, which continued until November 19, 1923, when the defendant Morison withdrew from the escrow and so notified plaintiff. The plaintiff never placed in escrow at any time any money called for in the contract. Thereafter, on December 15, 1923, the plaintiff sought to waive all objections to the title and to the setbacks and restrictions, etc., and so notified Morison, but Morison refused to proceed further with the transaction and withdrew his deed from escrow. Thereafter, and on the 4th of March, 1924, this action for specific performance was instituted.

The answer, in addition to denying the material allegations of the complaint, sets up the special defense of fraud, practiced upon the defendant Morison by his own agent, Terry & Company.

The case was tried by the court, sitting without a jury, and the court found that plaintiff was not entitled to enforce specific performance of the contract and rendered judgment accordingly. Since the trial the defendant Morison has died, and Catherine Elizabeth Morison, executrix of his estate, has been substituted as defendant and respondent herein.

Many reasons are set forth in appellant's brief why the judgment should be reversed and equally as many are set forth in respondent's brief why it should be affirmed.

The principal contention made in support of the findings and judgment of the trial court is that plaintiff and his agent, the latter also being the agent for the defendant, did not exercise the utmost good faith, and concealed from the defendant Morison the fact that the property was being sold for $35,000 or $36,000 instead of $30,000.

Section 3391 of the Civil Code provides that specific performance cannot be enforced against a party to a contract in any of the following cases: "(3) If his assent was obtained by the misrepresentation, concealment, circumvention, or unfair practices of any party to whom performance would become due under the contract, or by any promise of such party which has not been substantially fulfilled; or, (4) If his assent was given under the influence of mistake, misapprehension, or surprise. . . . "

It is admitted that Terry & Company was the agent of the defendant Morison. The law requires perfect good faith on the part of agents, not only in form, but in substance. ■ Indeed, the obligation of an agent to his principal demands of him the strictest integrity, good faith, and the most faithful service. (*Lem* v. *Wilson*, 27 Cal. App. 512 [150 Pac. 641]; *Ritchey* v. *McMichael*, 4 Cal. Unrep. 384 [35 Pac. 151]; *Allsopp* v. *Joshua Hendy Machine Works*, 5 Cal. App. 228 [90 Pac. 39]; 1 Cal. Jur. 790.)

Section 2330 of the Civil Code provides: "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." Therefore, any profit, or advantage, that Terry & Company might make out of the transaction should have been disclosed to the defendant Morison.

■ The law is well settled that Terry & Company, being the admitted agent of Morison, the seller, they could not at the same time be the agent of the purchaser without the consent of both seller and purchaser; the double agency is a fraud upon the principal, and he is not bound. (*Gordon* v. *Beck*, 196 Cal. 773 [239 Pac. 309], and cases there cited; *Glenn* v. *Rice*, 174 Cal. 269 [162 Pac. 1020].)

■ The defendant Morison was entitled to receive, and had the right to expect, absolute fidelity and loyalty to his interests on the part of his agent, and their secret agreement with Mrs. Ransdell to sell the same property to her for $35,000 and receive a profit of $5,000 in addition to a commission of $1,000 from Morison for making the sale for him at $30,000 rendered the contract between plaintiff and Morison, which was still executory, voidable at the option of Morison. (*Gordon* v. *Beck, supra.*)

An agent cannot serve two masters. In Mechem on Agency, page 301, this language is found: "Fidelity in the agent is what is aimed at, and as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. This doctrine, to speak again in the beautiful language of another, has its

foundation, not so much in the commission of actual fraud, as in that profound knowledge of the human heart which dictated that hallowed petition 'Lead us not into temptation but deliver us from evil,' and that caused the announcement of the infallible truth that 'a man cannot serve two masters.' ''

Irrespective of the question of fraud it is contended by respondent that plaintiff's action must fall because there is no proof that the contract was just and reasonable, and the consideration adequate. ■ The law is well established that before a court of equity will decree specific performance of a contract, the plaintiff must allege and prove that the contract was just and reasonable and the consideration adequate. (Sec. 3391, Civ. Code; *White* v. *Sage,* 149 Cal. 613 [87 Pac. 193]; *Gibbons* v. *Yosemite Lumber Co.,* 172 Cal. 714 [158 Pac. 196]; *Bishop* v. *Barndt,* 43 Cal. App. 157 [184 Pac. 901]; *Joyce* v. *Tomasini,* 168 Cal. 237 [142 Pac. 67]; *Ehrhart* v. *Mahony,* 43 Cal. App. 448 [184 Pac. 1010]; *O'Connell* v. *Fowler,* 46 Cal. App. 466 [189 Pac. 322]; *Morgan* v. *Dibble,* 43 Cal. App. 116 [184 Pac. 704]; *Salisbury* v. *Yawger,* 184 Cal. 795 [195 Pac. 682]; *Herzog* v. *Atchison, Topeka & Santa Fe R. R. Co.,* 153 Cal. 496 [17 L. R. A. (N. S.) 428, 95 Pac. 898]; *Stiles* v. *Cain,* 134 Cal. 171 [66 Pac. 231]; *Magee* v. *Magee,* 174 Cal. 276 [162 Pac. 1023].)

■ "Adequate consideration," as used in section 3391, subdivision 1, of the Civil Code, does not necessarily mean the highest price obtainable, but a price that is fair and reasonable under all the circumstances; it is always peculiarly a question of fact for the trial court to determine, in the light of all the facts and circumstances of each particular case. (*Morrill* v. *Everson,* 77 Cal. 114 [19 Pac. 190]; *Wilson* v. *White,* 161 Cal. 465 [119 Pac. 895]; *Cummings* v. *Roeth,* 10 Cal. App. 144 [101 Pac. 434].) ■ No witness·testified as to the market value, or the reasonable value of the property in question at the time the contract was entered into, and the court found on this point as follows: "The said price of $30,000 for said property was neither just, nor fair, nor reasonable, nor adequate as to said D. Morison, also known as Donald Morison, and there is not sufficient proof to find that said sum of $30,000 was a

fair market value of said property at the date of said agreement.'' We think this finding is amply supported by the evidence.

There is sufficient evidence to show that the price was not fair and adequate under all the circumstances. No better proof of the inadequacy of the consideration, under all the circumstances, could be produced than the fact that two other persons were, at the time Morison entered into the contract with appellant, anxious to purchase the property, one for $35,000 and another for $36,000, and both proposed purchasers offered just as favorable terms as those offered by appellant.

For still an additional reason we think the court's conclusion in denying specific performance was correct: The terms of the contract are so uncertain and indefinite as to be incapable of being specifically performed. ██ A contract cannot be specifically enforced unless its terms are clear, definite, and certain. (*Agard* v. *Valencia,* 39 Cal. 292; *Magee* v. *McManus,* 70 Cal. 553 [12 Pac. 451]; *Stanton* v. *Singleton,* 126 Cal. 657 [47 L. R. A. 334, 59 Pac. 146]; *Monsen* v. *Monsen,* 174 Cal. 97 [162 Pac. 90]; *Magee* v. *Magee, supra;* sec. 3390, subd. 6, Civ. Code; *Klein* v. *Markarian,* 175 Cal. 37 [165 Pac. 3]; *Buckmaster* v. *Bertram,* 186 Cal. 673 [200 Pac. 610].)

In a case where the contract is thus so uncertain a court of equity will not decree specific performance, but will leave the party to his remedy at law. (*Agard* v. *Valencia, supra; Prince* v. *Lamb,* 128 Cal. 128 [60 Pac. 689]; *Watson* v. *Fisher,* 79 Cal. App. 621 [250 Pac. 577]; *Allman* v. *Rich,* 76 Cal. App. 601 [245 Pac. 439]; *Wood* v. *Anderson,* 199 Cal. 440 [249 Pac. 862].)

██ If it be conceded that the contract is sufficiently definite and certain to be specifically enforced, still the court found that appellant did not comply with its terms by depositing $4,800, the balance of the cash payment of $5,000 called for in the contract, and that there was nothing in the contract, or the evidence, that excused him from prompt performance. There is ample evidence in the record to sustain this finding, and this fact alone affords a sufficient answer to appellant's demand for specific performance. Mr. Morison's duty to carry out the terms of the contract in

good faith was at an end upon the failure of appellant to deposit the $4,800 within the time provided by the contract. (*Dunne* v. *Colomb,* 192 Cal. 740 [221 Pac. 912]; sec. 3392, Civ. Code.)

Other points are presented by the briefs, but under the view we have taken of the case, we deem it unnecessary to discuss them in detail.

We have examined the record with care and we are fully convinced that the trial court's conclusions are sustained by the evidence, and that the judgment should be affirmed, and it is so ordered.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 26, 1928.

All the Justices concurred.