[S. F. No. 14415. In Bank.—October 24, 1932.]

EMMA R. TARIEN, Respondent, v. PHIL C. KATZ et al., Defendants; W. C. COFFER, as Executor, etc., et al., Appellants.

Livingston & Livingston for Appellants.

Joseph C. Myerstein for Respondent.

PRESTON, J. — Appeal from judgment for plaintiff quieting her title to certain personal property and directing a delivery of possession thereof.

The action was commenced by plaintiff on April 8, 1930, against defendant Katz, as administrator of the estate of

Charles Parker, deceased; John Doe et al., defendants. It was later discovered that decedent died testate and, on May 29, 1930, W. C. Coffer was appointed executor of his last will and testament, whereupon said administrator, by order of the superior court, delivered to Anglo-California Trust Company, as depository, all the assets claimed by the estate. In the present cause leave was granted to plaintiff to file an amended and supplemental complaint substituting W. C. Coffer, executor, and the Anglo-California Trust Company, a corporation, as defendants in the place of said Katz, administrator; John Doe et al. The Bank of Italy was also named as defendant, but during the course of the trial plaintiff consented to a nonsuit against it.

The amended and supplemental complaint alleged that plaintiff married Charles Parker on December 9, 1919; that on May 11, 1926, she secured an interlocutory decree of divorce against him upon substituted service on the ground of wilful neglect and on June 2, 1927, procured a final decree of divorce; that in said divorce action it was adjudged that there was community property belonging to plaintiff and said Charles Parker, but that the value and disposition thereof were not determined. The pleading further alleged that at the time the final decree of divorce was granted, plaintiff and said Charles Parker owned personal property as follows: $7,000 deposited with the Guaranty Building and Loan Association on January 5, 1926; $1274 deposited with Bank of Italy, and 14 Straus Safe Deposit Company bonds, par value $1,000 each, thereafter exchanged for a later issue of 11 bonds of said company of $1,000 par value each and $3,000 in cash; that plaintiff was the owner of and entitled to immediate possession of an undivided half interest in and to said personal property, despite the adverse claims of the other defendants thereto; that said Charles Parker died testate at Miami, Florida, about January 30, 1930. The prayer of the complaint was that defendants be required to set forth the nature of their respective claims; that it be adjudged that said claims were without right or title; that plaintiff was the owner of said undivided one-half interest; that it be decreed that defendants deliver said interest to her and that plaintiff have judgment for her costs and other relief.

Defendants Coffer and Anglo-California Trust Company filed separate answers. The answer of defendant Coffer denied the material allegations of the complaint and affirmatively alleged that by the judgment in the divorce suit between plaintiff and decedent, all issues with respect to their community property were finally adjudicated; that prior to their marriage an agreement was executed whereby plaintiff released any right or interest in the property of decedent and that plaintiff's cause was barred by laches. The answer of the Anglo-California Trust Company likewise denied all material allegations of the complaint save those to the effect that by order of the probate court on May 29, 1930, it was made the depository of the assets of said estate, consisting of $8,179.18 in cash and 11 bonds, par value $1,000 each, of said Straus Safe Deposit Company, which assets it held as an officer and appointee of said probate court.

Upon these pleadings issue was joined and the cause went to trial, with judgment for plaintiff, as noted above. The judgment-roll in said divorce action was introduced in evidence as well as certain papers showing the status of the Parker estate probate proceeding. Other than this the record consists largely of the testimony of plaintiff herself, which is in many respects contradictory and somewhat evasive, but, if credited, furnishes quite sufficient support for the findings of the court below.

The question of importance is whether the personal property in the possession of decedent at the time of his death was formerly common property of himself and plaintiff, as husband and wife. The decedent was a professional gambler, specializing in the game commonly called "poker" and he had no other gainful occupation. The source of the property in dispute was known to exist as early as July, 1922, and certain other accumulations were known to be in existence in 1926. From these assets were traced the property in suit. The character thereof must be determined from the testimony of plaintiff herself. She and decedent were married in Reno in December, 1919. Prior to her marriage she signed an antenuptial agreement, which if binding, would destroy her claim to said property. But she testified, and the court found, that within a few days after her marriage the contract was mutually rescinded and

annulled and, at the husband's suggestion, destroyed with this intent. The sufficiency of the evidence to support this finding appellants concede.

Plaintiff further testified that upon the marriage decedent showed her a bank-book showing deposit entries·aggregating about $22,000 and that he likewise possessed a city lot in Reno and a half interest in a gambling-house there. Whether this deposit had been depleted by checking thereon does not appear. In January, 1920, decedent sold his business and for the next two and one-half years he traveled from place to place in various parts of the world. He was ill to a considerable extent during that period and for that reason had unusual expense. He traveled from Reno to New York; then back to Reno; thence to Oregon and in 1921 to Vancouver; from there he went to Australia and returned from Australia to California. Again in 1921 he took a trip to New York; thence to South America and then back to Taft and other points in California. What his fortune consisted of at the end of these travels, no one knows. His wife says he was without funds when he went to Australia and likewise without funds when he returned to California and she, therefore, obtained employment for herself. Appellants say that the statements of decedent with respect to lack of funds must be discounted as plaintiff admits that such complaints were chronic with him. But at any rate, there came from Taft, California, in 1922, the funds which are the foundation of the property here in suit.

This the law presumes to be common property and the court found in accordance with this presumption. Can we say this presumption has been overcome? It may well be that if the facts were known, the property could be traced to the funds on hand in Reno in 1919, but to so assume would be to create at most but a conflict of presumptions of law. Who knows whether the fickle goddess of fortune frowned or smiled upon decedent during the two and one-half years in question? It is admitted by appellants that his fortune must have fluctuated during this period. Who can say that a tidal wave may not have swept it away entirely? We hesitate to upset a finding of the trial court when to do so implies stability and constancy to a gambler's bank roll. We cannot say that the money sent to San

Francisco from Taft was not a "new stake"; hence the finding must be upheld.

■ Appellants next assert that the divorce decree is *res judicata* against the claim of plaintiff. We regard this position as untenable. It is true that the complaint alleged and the court found that community property existed, but the amount, character and value thereof were not put in issue nor did the decree in anywise attempt to dispose thereof. Under such circumstances the parties became tenants in common of the community property. The case of *Brown* v. *Brown,* 170 Cal. 1 [147 Pac. 1168], followed in *Metropolitan etc. Co.* v. *Welch,* 202 Cal. 312 [260 Pac. 545, 547], is in nowise similar to the situation here. In the first case mentioned the complaint alleged and the court found that there was no community property. In the second case mentioned the complaint set up certain specific property as the property of the community and the court decreed this to plaintiff and then undertook to distribute all the other common property; therefore, this court held that as the complaint set up the existence of certain specific property only, the decree awarding it was an adjudication against the rights of plaintiff in any other common property that might thereafter be found to exist. But even in that case we find this statement: "This rule, of course, could not be applicable when the final decree makes no disposition whatever of the community property. In such a case the former spouses become tenants in common in the community property and their rights thereto could be determined in a subsequent action. (*Estate of Brix,* 181 Cal. 667, 676 [186 Pac. 135].)"

■ The court also found against the claim of laches and we see nothing which compels us to overthrow this finding. At the time the divorce action was filed in 1926, the decedent fled the jurisdiction of California and was served by publication of summons as a resident of Canada. There is no evidence that the wife knew where the common property could be found. The nature of the property, the nature of the husband's business and the itinerant habits possessed by him all served to support the finding of the court. The claim that the wife should be denied relief because in 1929, shortly before the passing of decedent and while she was living with another husband at Salinas, she refused to see decedent, does not seem to be of sufficient strength to over-

come the conclusion announced above. As already noted, decedent died within a short time thereafter and she could have had no accurate information as to the character and extent of the property or its location.

Complaint is made that the direction to defendants executor and trust company to deliver to plaintiff the one-half of the property decreed to her, is too broad and not within the pleadings; hence it should not be sustained. The complaint, however, alleged the existence and possession of the property in defendants, setting up plaintiff's right to possession thereof and prayed for an order requiring its delivery to her. Moreover, the answer of defendants showed the property to be in their possession. The order requiring its delivery is therefore in full accord with the issues as made by the pleadings. (Sec. 580, Code Civ. Proc.) There is nothing in the case of *Baar* v. *Smith*, 201 Cal. 87 [255 Pac. 827], that in anywise is at variance with this holding. Again, the property of plaintiff never became the property of the estate of decedent and there is no rule of law which prevents an executor who has possession of property which does not belong to his decedent from being required to surrender it to the proper party.

The judgment is affirmed.

Curtis, J., Tyler, J., *pro tem.*, Shenk, J., Waste, C. J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.