[Civ. No. 8598.  First Appellate District, Division One.—March 6, 1933.]

J. I. RADONICH, Respondent, v. GEORGINA RADONICH, Appellant.

James P. Montgomery for Appellant.

Richard Liebman and Jo Lawrence for Respondent.

KNIGHT, J.—Approximately fifteen years after the entry of the interlocutory judgment of divorce awarding appellant alimony in the above-entitled cause she applied for and obtained an *ex parte* order, based on affidavit, for the issuance of an execution which the court shortly afterwards recalled and quashed on motion of respondent after a hearing on the merits; and this appeal was taken from the order made in the latter proceeding.

Section 685 of the Code of Civil Procedure, pursuant to which the order for the issuance of the execution was granted, provides that "by leave of court" a judgment may be enforced or carried into execution after a lapse of five years from the date of its entry; and it is well settled that in reviewing the trial court's action either in granting an order for the issuance of an execution under the authority of said section, or in recalling and quashing an execution so issued, an abuse of discretion is never presumed, a clear showing of such abuse being essential to interference by the reviewing court. (*Wilder* v. *Wilder*, 214 Cal. 783 [7 Pac. (2d) 1032]; *Parker* v. *Parker*, 203 Cal. 787 [266 Pac. 283, 286]; *Wheeler* v. *Eldred*, 137 Cal. 37 [69 Pac. 619].)

In the present case the interlocutory judgment was entered in September, 1916. It awarded appellant the custody of the two minor children, Peter and John, aged five and four years, respectively, and directed respondent to pay appellant $12.50 a month toward her support and $20 a

month for the maintenance of the children. Final judgment was entered in October, 1917. It contained no provision as to alimony. The following month respondent entered the army and later was sent overseas. He was discharged from the army in 1919; and in April, 1926, he regained custody of the children and thereafter supported them. In September, 1931, which, as will be noted, was fifteen years after the entry of the interlocutory judgment, and more than five years after respondent secured custody of the children, appellant obtained the *ex parte* order for the issuance of an execution to collect the accumulated alimony. The order was based on averments in appellant's affidavit to the effect that none of said payments had been made, and that appellant "continued to care for and have full and sole charge, control and support of said children up to the first of May, 1926". However, at the hearing of respondent's motion it was shown that during the fifteen years which elapsed between the granting of the interlocutory judgment of divorce and the issuance of the execution appellant contracted five additional marriages, some of them illegally; and that at least three of the after-acquired husbands supported her and the boys while she was living with them. In this regard the evidence established that between the date of the rendition of said interlocutory judgment on September 19, 1916, and its entry on September 26, 1916, under the fictitious name Georgina Radimir, appellant entered into a marriage ceremony with one Sherman S. Sisson, with whom she continued to live in matrimonial relationship until May, 1918, at which time he died as the result of an industrial accident. About a year later she married a man named Kern, but he was sent to the state prison and thereupon she was divorced from him. She next married one Ghiorza, from whom she obtained an interlocutory judgment of divorce in July, 1926, but the final decree was not entered until October, 1931, after appellant had been cross-examined with reference thereto in the present proceeding; and prior to its entry she contracted two additional marriages, the first with a man named Razum, from whom she claimed to have been divorced, and the second with Richard, with whom, so far as the record shows, she was still living.

Moreover, it was shown that during the time appellant was legal custodian of the children by virtue of said judgment,

she received large sums of money for the support of herself and the children from the Industrial Accident Commission; also that during a considerable portion of said time the boys were wards of the juvenile court and were supported by the department of public welfare. The evidence relating thereto was as follows: Shortly after the death of Sisson appellant made application to the Industrial Accident Commission for compensation, alleging in her petition that Sisson was her husband and the father of the boys, and that they were dependent upon him for support. The commission entered findings accordingly and made an award to appellant in a sum exceeding $4,480. Afterwards the commission discovered that appellant had never been legally married to Sisson, and that he was not the father of the boys; whereupon the award in favor of appellant was set aside, upon the ground that it was obtained by fraud. The commission made additional findings, however, to the effect that at the time of Sisson's death the boys were living in his household, as members of his family; that they were being supported by him in good faith, and were wholly dependent upon him for support. It was ordered, therefore, that the award theretofore made to appellant be made payable to her as guardian of the boys, that $2,500 thereof be used by her to purchase a home for them, and that the balance be paid to her in monthly installments of $74 for their maintenance and support. She purchased the home as directed, for $2,500, but later sold it for $3,000. As guardian she accounted to the court for $2,000 of the sale price, and at the hearing of the present proceeding admitted having kept the remaining $1,000 for her own use and benefit. Furthermore, it was shown that in addition to the sum mentioned she received $1983.05 from the commission in twenty-six monthly installments for the support of herself and children, for which she rendered no account whatever, and that during much of that period the boys were under the jurisdiction of the juvenile court and being supported by the department of public welfare, the juvenile authorities having first taken charge of the boys in 1920, because, so the petition therein recited, they had been deserted by their mother, whose whereabouts was unknown, and again in 1925, when they were committed to the custody of said authorities on petition of Ghiorza, for some alleged juvenile delinquency.

When the foregoing facts and circumstances are considered in the light of the legal rules governing appellate courts in reviewing a proceeding of this kind, it is evident that there are no grounds upon which it may be declared as matter of law that the action of the trial court in recalling and quashing the execution constituted an abuse of discretion. With respect to the allowance made by the interlocutory judgment in favor of appellant for her own support, the case in principle is identical with and must. be controlled by the doctrine stated in *Parker* v. *Parker, supra.* There the decree directed the husband to pay alimony for the support of his wife and minor child, and a few days after the entry of the final decree the divorced wife married a man named Pappert, from whom also she was subsequently divorced. The decree in the latter case likewise provided for her maintenance and support. Some ten years after being divorced from Parker she obtained an order for the issuance of a writ of execution, which Parker moved to have vacated and recalled and his motion was denied. The trial court's order made in this behalf was reversed on appeal, the court saying: "The court in the present proceeding made no finding that Pappert [the second husband] was unable to support his wife during their marriage and the record does not present facts from which it may reasonably be said that such a finding could be implied. Such a showing and a finding based thereon, we think, were essential to a valid order requiring a former husband to continue to support his former wife during her marriage to another man. Furthermore, the fact that the plaintiff waited for over ten years before the original judgment was sought to be enforced by her, and during which she was the wife of another man, furnished a cogent reason which should have appealed to the discretion of the trial court in determining whether the order for execution should issue. The showing made on the motion to vacate the order and recall the execution was sufficient to compel the granting of the motion." In the present case there was no finding that appellant's present husband is unable to support her, nor, so far as our attention is called, was there any evidence introduced to that effect.

■ And with respect to that portion of the judgment granting an allowance in favor of appellant for the support of the children, the issue before us is not whether, during

the period of time the judgment was legally enforceable, respondent was absolved from complying with its terms merely because his children were being supported from other sources, but rather whether, in view of the fact that the children did not receive their support during said period of time through the efforts of appellant, the trial court abused its discretion in withholding its leave to allow appellant to collect the full amount of such judgment long after it had become barred by the statute of limitations. As stated, under the circumstances above related, we cannot say that it did.

The order appealed from is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.