[L. A. No. 21044.   In Bank.   Nov. 8, 1950.]

WALTER J. BECKER, Appellant, v. GRACE C. BECKER, Respondent.

Charles Murstein and Noel Edwards for Appellant.

Keslar & Woodward and F. Murray Keslar for Respondent.

CARTER, J.—On May 12, 1937, an interlocutory decree of divorce was granted defendant cross-complainant wife on the ground of extreme cruelty; the final judgment was entered June 11, 1938. The interlocutory decree of divorce provided in the fifth paragraph as follows: *"That within two years from the date of this interlocutory decree of divorce,* cross-defendant (plaintiff) shall pay to cross-complainant, the sum of Six Hundred Twenty-five and 00/100 Dollars ($625.00), in cash, said sum representing one-half (½) the estimated value of said two and one-half (2½) acres of land community property of the parties hereto; that on the payment by cross-defendant of said sum of $625.00, cross-complainant (defendant) will execute a good and sufficient instrument of conveyance to cross-defendant, or to such person or persons as he may direct to all her right, title and interest in and to said two and one-half (2½) acres of land; that until such conveyance is made, cross-defendant shall pay all taxes that may be or have been assessed or levied against said real estate." (Em-

phasis added.) The final decree adopted the provisions of the interlocutory decree.

Neither of the parties appealed nor made any attempt to comply with or enforce the terms of the judgment until July 7, *1948* (except as will appear), when cross-defendant (plaintiff) made a motion in the same (divorce) action "to direct the defendant to execute a deed and to satisfy money judgment." Plaintiff alleged that on May 26th, 1948, he had tendered the sum of $625 with interest to the defendant who refused to accept it and that he was now ready, able and willing to pay that amount, plus interest, into court. In his affidavit he states that he had been unable to pay until that time; that he has expended approximately $1,000 since the interlocutory decree in filling in, and levelling the property. In the affidavit of the attorney for the defendant, it is alleged that plaintiff's failure to pay the money within the two-year period had the effect of leaving the ownership of the property in the parties as tenants in common. It appears from the affidavit of a real estate broker that the plaintiff now has a buyer for the property who is willing to pay $24,750.

The order appealed from provided that "It Is Hereby Ordered, Adjudged and Decreed that plaintiff is entitled to obtain title amd [sic] sell the real property hereinafter described when he agrees to pay defendant *one-half the proceeds of the sale* after deducting the actual expenses of the sale, as well as the amount of taxes and improvements paid and expended by the plaintiff and that transaction should be handled through an escrow.

"It Is Further Ordered, Adjudged and Decreed that the said motion of plaintiff to direct the defendant to execute a deed and to satisfy money judgment is granted conditionally, the condition being his acceptance of the foregoing procedure." [Emphasis added.]

Plaintiff appeals, contending that the trial court was without jurisdiction to change the terms of the property settlement as set forth in the interlocutory decree which was a conclusive adjudication of the property rights of the parties upon the expiration of the time for appeal and for relief pursuant to section 473, Code of Civil Procedure.

Plaintiff maintains that when a judgment has become final, the judgment debtor has a right under section 675 of the Code of Civil Procedure, on motion to order the judgment satisfied of record where it has been paid. He concedes that

this judgment has not actually been paid, but contends that a tender was made which worked a discharge of the lien given as collateral therefor, and that "The tender having been made, it is equivalent to the satisfaction of the judgment and therefore the motion is proper." (As will hereinafter appear, this section of the Code of Civil Procedure has no application to the facts before us.)

There are two questions presented by this appeal: (1) The interpretation of the two-year limitation in the interlocutory decree; and (2) the procedure to be followed to enforce the property rights of the parties.

This court has said recently (*Taylor* v. *George*, 34 Cal.2d 552, 557 [212 P.2d 505]) that " 'An interlocutory judgment of divorce is, therefore, so far as it determines the rights of the parties, a contract between them' " (quoting from *London G. & A. Co.* v. *Industrial Acc. Com.*, 181 Cal. 460, 465 [184 P. 864]). (See, also, *Jones* v. *Union Oil Co.*, 218 Cal. 775 [25 P.2d 5]; *Miller* v. *Murphy*, 186 Cal. 344 [199 P. 525]; *Weaver* v. *San Francisco*, 146 Cal. 728 [81 P. 119].) The interpretation of such a decree is a question of law. (*Union Oil Co.* v. *Union Sugar Co.*, 31 Cal.2d 300 [188 P.2d 470]; *Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819 [167 P.2d 719, 164 A.L.R. 685]; *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825]; *Estate of Pearson*, 90 Cal.App.2d 436 [203 P.2d 52]; *Estate of Norris*, 78 Cal.App.2d 152 [177 P.2d 299].)

If we consider the interlocutory decree as a contract, it would appear that by its terms the parties obtained mutual rights and were under mutual obligations—one to pay a certain sum in return for which the other was to convey a certain one-half interest in real property. These promises were mutually concurrent and were, by the terms of the decree, to be performed within two years from the date of the decree. The terms of the decree should have been complied with during the two-year period, but were not. Likening it to a contract in which we assume that time was not of the essence, performance should have been within a reasonable time thereafter. Section 276 of the Restatement of Contracts provides that "In determining the materiality of delay in performance, the following rules are applicable: (d) In contracts for the sale or purchase of land delay of one party must be greater in order to discharge the duty of the other than in mercantile contracts. (e) In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract

where the delay can be compensated for by interest on the purchase money or otherwise, unless (i) the contract expressly states that performance at or within a given time is essential, or (ii) the nature of the contract, in view of the accompanying circumstances, is such that enforcement will work injustice." Section 1492 of the Civil Code is substantially the same as subdivision e(i) of the Restatement. That section provides that "Where delay in performance is capable of exact and entire compensation, and time has not been expressly declared to be of the essence of the obligation, an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due, but without prejudice to any rights acquired by the creditor, or by any other person, in the meantime." By his motion, plaintiff is, in effect, seeking specific performance of a contract which should have been performed within a reasonable time after the expiration of the two-year limitation. It would seem that, as a matter of law, it can be said that a nine-year delay is not a reasonable time. Section 3392 of the Civil Code provides that "Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated, in which case specific performance may be compelled, upon full compensation being made for the default." Even where time is not of the essence, courts will not allow specific performance after delay in tender, if enforcement will work injustice, or where delay is inexcusable. (*Cockrill* v. *Boas*, 213 Cal. 490 [2 P.2d 774]; *Mathews* v. *Davis*, 102 Cal. 202 [36 P. 358]; *Boulenger* v. *Morison*, 88 Cal.App. 664 [264 P. 256].) It would seem that if plaintiff had been able, as he was, to expend $1,000 on improving the property, his plea of incapacity to comply with the decree is not too meritorious. And it would also appear that to enforce the original provisions as to payment will work a great injustice on defendant.

It appears that the decree gave the parties a two-year period and a reasonable time thereafter to comply with its terms and that when that time expired they would each hold an undivided one-half interest in the property as tenants in common. In other words, the result is the same as it would be had no final disposition of the community property been

made in either the interlocutory or final divorce decrees. (5 Cal.Jur. 360.)

This court has held many times that a divorce decree which adjudicates the property rights of the parties is not subject to modification regardless of whether or not it is based on agreement of the parties. (*Codorniz* v. *Codorniz*, 34 Cal.2d 811 [215 P.2d 32]; *Leupe* v. *Leupe*, 21 Cal.2d 145 [130 P.2d 697]; *Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265]; *Dupont* v. *Dupont*, 4 Cal.2d 227 [48 P.2d 677]; *Ettlinger* v. *Ettlinger*, 3 Cal.2d 172 [44 P.2d 540].) It would appear, as a result, that *had* this motion been made at the end of the two-year period, or within a reasonable time thereafter, the trial court should have granted the motion by making an order compelling defendant to convey her interest in the property upon payment of $625 as provided in the interlocutory decree. Such a motion was not made, however, and the provisions of the interlocutory decree purporting to make a division of the community property of the parties is now of no force and effect. The result is the same as if no disposition of such community property had been made, and the parties now hold title to the property as tenants in common. (*Buller* v. *Buller*, 62 Cal.App.2d 694 [145 P.2d 653]; *Lorraine* v. *Lorraine*, 8 Cal.App.2d 687 [48 P.2d 48]; *Fieger* v. *Fieger*, 28 Cal.App.2d 736 [83 P.2d 526].) It was, therefore, improper for the trial court to make an order in the same (divorce) action modifying the terms of the property settlement contained in the interlocutory decree and which was incorporated by reference in the final decree of divorce. When the community interests are not determined in the interlocutory or final decree, the spouses must prove, in a separate action, the property to which they are entitled. (*Green* v. *Green*, 66 Cal.App.2d 50, 57 [151 P.2d 679]; *Lorraine* v. *Lorraine*, *supra*; *Brown* v. *Brown*, 170 Cal. 1 [147 P. 1168].)

For the foregoing reasons the order appealed from is reversed.

Gibson, C. J., and Shenk, J., concurred.

TRAYNOR, J., Concurring.—A judgment is not less a judgment when it is likened to a contract for certain purposes (*Jones* v. *Union Oil Co.*, 218 Cal. 775, 778 [25 P.2d 5]; *London G. & A. Co.* v. *Industrial Acc. Com.*, 181 Cal. 460, 465-466 [184 P. 864]; 1 Freeman, Judgments, § 6, pp. 10-11), or included within the meaning of the term "Contract" in

certain statutes (*Taylor* v. *George,* 34 Cal.2d 552, 557 [212 P.2d 505] ; *Miller* v. *Murphy,* 186 Cal. 344, 347 [199 P. 525] ). Its interpretation, effect, and enforcement are still subject to the rules of law governing judgments. Thus an action on a judgment is governed by the statute of limitations relating to judgments (Code Civ. Proc., § 336[1] ), and not by those relating to contracts (Code Civ. Proc., §§ 337[1], 339[1] ; see, also, *Dore* v. *Thornburgh,* 90 Cal. 64, 66 [27 P. 30, 25 Am.St.Rep. 100] ; 1 Freeman, Judgments, §§ 5-6, pp. 7-13). Sections 681 to 713½ of the Code of Civil Procedure governing the enforcement of judgments govern the enforcement of the interlocutory decree in the present case. They cannot be supplanted by principles at variance therewith based on an analogy between contracts and judgments.

The decree in the present case ordered that "within two years from the date of this interlocutory decree of divorce [plaintiff] shall pay to [defendant], the sum of Six Hundred Twenty Five and 00/100 Dollars . . . that on the payment by [plaintiff] of said sum of $625, [defendant] will execute a good and sufficient instrument of conveyance to [plaintiff] . . . to all her right, title and interest in and to said . . . land." The decree did not make a presently effective disposition of the community property (*cf., Wilson* v. *Wilson,* 76 Cal.App.2d 119, 130 [172 P.2d 568] ), or effect any transfer of the legal title thereto. It merely ordered the parties to perform certain acts upon performance of which plaintiff would become the sole owner of the real property in question. Like a conditional decree for specific performance of a contract for the sale of real property (see *Epstein* v. *Gluckin,* 233 N.Y. 490, 494 [135 N.E. 861] ), the interlocutory decree merely created reciprocal rights and obligations in both parties enforceable by either on a tender of the performance due from him under the terms of the decree. The enforcement of the decree as a judgment of a court of competent jurisdiction is governed by the provisions of sections 681 and 685 of the Code of Civil Procedure.

Execution on a judgment will issue as a matter of right for a period of five years from the date of entry. (*Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 201 [200 P.2d 529] ; *Wolfe* v. *Wolfe,* 30 Cal.2d 1, 4 [180 P.2d 345] ; Code Civ. Proc., § 681.) The decree in the present case in effect postponed enforcement thereof by defendant for two years; by not appealing from the decree, she agreed to that postponement. (*London G. &*

*A. Co.* v. *Industrial Acc. Com., supra.*) When enforcement of a judgment is postponed for a specified period, the time during which it is postponed "must be excluded from the computation of the five years within which execution may issue." (Code Civ. Proc., § 681.) Defendant was therefore entitled to enforce the judgment at any time within five years after performance by plaintiff became due, or a maximum of seven years after entry of the decree. Enforcement by plaintiff, however, was not postponed; he could compel the execution of a deed by defendant at any time after entry of the decree upon tender of $625. Section 681 therefore limits enforcement by plaintiff as a matter of right to a period of five years after entry of the decree. The majority opinion, however, holds by analogy to contract law that the judgment may be enforced only for two years "plus a reasonable time" thereafter. What is a reasonable time will depend on the circumstances of each case. It may be less than five years after performance becomes due. The rule of the majority opinion is directly in conflict with the statutory provision that the judgment is enforceable as a matter of right for a period of five years from the date of its entry, excluding any time during which enforcement is stayed or postponed by order of the court. The latter rule must govern, since it is the rule controlling the enforcement of judgments.

When more than five years have elapsed from the date of entry of judgment, subject to the exclusion of any time during which execution is postponed, issuance of a writ of execution is not a matter of right, but a matter within the sound discretion of the trial court. The writ may then issue "by leave of the court, upon motion . . . accompanied by an affidavit or affidavits setting forth the reasons for failure to proceed in compliance with the provisions of section 681 of this code. The failure to set forth such reasons as shall, in the discretion of the court, be sufficient, shall be ground for the denial of the motion." (Code Civ. Proc., § 685.) Plaintiff did not seek to enforce the judgment until more than 11 years had elapsed since the date of entry thereof. The trial court found that his failure to seek execution at an earlier date was not justified and denied his motion. The evidence set forth in the majority opinion demonstrates that the denial of the motion was not an abuse of the court's discretion under section 685. (*Di Corpo* v. *Di Corpo, supra,* 200; *Williams* v. *Goodin,* 17 Cal.App.2d 62, 64-65 [61 P.2d 507]; *Wheeler* v. *Eldred,* 121 Cal. 28, 29, 30 [53 P. 431, 66 Am.St.Rep. 20];

*Radonich* v. *Radonich,* 130 Cal.App. 250, 254 [20 P.2d 51].)

The trial court must, on a motion under section 685, issue or deny the writ of execution. It has no power to modify the judgment. (*Parker* v. *Parker,* 203 Cal. 787, 795 [266 P. 283]; *Weldon* v. *Rogers,* 154 Cal. 632, 634-635 [98 P. 1070].) The interlocutory decree was not appealed and it has long since become final. Trial courts cannot modify or amend their judgments except as prescribed by statute (*Bowman* v. *Bowman,* 29 Cal.2d 808, 814 [178 P.2d 751, 170 A.L.R. 246]) and there is no statutory authority for the modification of the decree in the present case. (*Bowman* v. *Bowman, supra*; *Estate of Burnett,* 11 Cal.2d 259, 262 [79 P.2d 89]; *Barlow* v. *City Council of Inglewood,* 32 Cal.2d 688, 692-693 [197 P.2d 721]; *Lankton* v. *Superior Court,* 5 Cal.2d 694, 698 [55 P.2d 1170]; 2 McBaine, California Trial & Appellate Practice, §§ 872-874, pp. 204-214; see, also, *Leupe* v. *Leupe,* 21 Cal.2d 145, 148 [130 P.2d 697].)

There is no question of the power of the court in the interlocutory decree to make a presently effective disposition of the community property, as in *Leupe* v. *Leupe,* 21 Cal.2d 145 [130 P.2d 697], in which the trial court presently awarded the husband certain personal property, subject to a lien thereon to secure payments to the wife for her interest therein. In such a case, the decree of its own force and effect disposes of the community property and transfers the title thereto. (*Cf., Wilson* v. *Wilson,* 76 Cal.App.2d 119, 130, 133 [172 P.2d 568].) In the present case, however, the trial court did not purport to make a presently effective disposition of the community property. Title thereto could not be altered or transferred without the performance of additional acts by the parties, viz., the payment of $625 by plaintiff to defendant and the execution of a deed by defendant to plaintiff. The situation with respect to that property therefore is governed by the rules applicable to the disposition of community property when the decree makes no provision therefor. The marriage was not dissolved by the interlocutory decree and no present disposition of the community property was made therein, so that it remained community property until the entry of the final decree. (*Pereira* v. *Pereira,* 156 Cal. 1, 10 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A.N.S. 880].) If neither the final nor the interlocutory decree mentions the community property, or if the trial court finds that certain property is community property but makes no present dis-

position thereof, the parties upon the entry of the final decree become tenants in common of that property. (*Tarien* v. *Katz,* 216 Cal. 554, 559 [15 P.2d 493, 85 A.L.R. 334] ; *Buller* v. *Buller,* 62 Cal.App.2d 694, 698 [145 P.2d 653] ; *Fieger* v. *Fieger,* 28 Cal.App.2d 736, 738 [83 P.2d 526].) In the present case, therefore, plaintiff and defendant at the time of the entry of the final decree became tenants in common of the real property in question, since no present disposition thereof was made. Defendant held title to her undivided half interest subject to her duty under the decree to convey that interest to plaintiff upon his payment of $625 to her. Until that conveyance was made, however, legal title rested in both parties as tenants in common. Its transfer was not effected by a decree directing that certain acts be done that would effect its transfer. Since the trial court in the exercise of a sound discretion determined that the decree could not be enforced on plaintiff's motion therefor, the respective interests of the parties in the real property may not be determined with reference to the divorce decree but must be adjudicated in an independent action brought for that purpose. (*Tarien* v. *Katz, supra; Buller* v. *Buller, supra; Brown* v. *Brown,* 170 Cal. 1, 3 [147 P. 1168] ; *Lorraine* v. *Lorraine,* 8 Cal.App.2d 687, 698 [48 P.2d 48] ; *Estate of Brix,* 181 Cal. 667, 676 [186 P. 135] ; *Metropolitan Life Ins. Co.* v. *Welch,* 202 Cal. 312, 318 [260 P. 545].)

I therefore concur in the judgment of reversal.

Edmonds, J., concurred.

SCHAUER, J.—I concur in the judgment of reversal. I think that the decree, properly construed, finally disposed of all community property. Among other things, it awarded $625 to defendant. This award was unconditional but plaintiff was expressly allowed two years within which to make the payment, before defendant could have execution to collect it. Subject to making such payment, and otherwise equally unconditionally, the property in question was awarded to plaintiff. There was no alternative for either the award of the money or the award of the property. All community interests and rights of the parties were completely determined by this judgment.

The effect of the provisions of the judgment is that the property was awarded to plaintiff but subjected to a lien to secure payment of the sum awarded defendant. The judg-

ment did *not* declare that time was of the essence of any of its provisions or that any rights therein created or determined were to be divested by lapse of time or any other occurrence. The two-year period was, in a sense, a stay of execution; at any time after the two years and within five years thereafter defendant could have had execution issue as of course. Likewise, either within the two years or within five years thereafter, plaintiff could, as of course, have paid the $625 with legal interest and have had the property cleared of the lien.

It seems to me to be unsound law and undesirable policy to require, as do a concurring majority, that the parties engage in new and independent litigation to resettle their property rights. Those rights have been once fully determined and the judgment making such determination has become final. If new litigation such as the majority suggest had been instituted within five years from entry of the judgment would not a plea of res judicata have been unanswerable? If the rights were res judicata then, by what process have they since become not res judicata? The parties have suggested and research has disclosed no prior case in California wherein, after full determination of community property rights in a judgment of divorce which has become final, this court has ordered the parties to relitigate their rights in an independent action.

I think that the judgment, long since final, cannot now be modified either in respect to its effect on the status of the parties or its allocation of property rights. The only question, as I see it, is one relating to enforcement. Can it now be enforced by plaintiff? In view of the fact that defendant at any time after the two-year stay and within five years thereafter could have had, as of course, and thereafter upon a reasonable showing, execution to enforce the judgment, and failed to ask its enforcement, I fail to see how she is prejudiced by the delay of plaintiff in making a tender of full performance on his part. Having security for eventual payment it is conceivable that she may have preferred to keep the $625 accumulating interest at the legal rate of 7 per cent per annum. There is no contention that she has not accepted other provisions of the judgment which went to her benefit. Under the circumstances I think that not only did the trial court have power to enforce the judgment, but that its failure to do so constitutes an abuse of judicial discretion.

For the reasons above stated I concur in the judgment of reversal.

Spence, J., concurred.

Appellant's petition for a rehearing was denied December 7, 1950. Schauer, J., and Spence, J., voted for a rehearing.