Michele RITTER

v.

MANTISSA INVESTMENT CORPORATION et al.

No. 2002–584–Appeal.

Supreme Court of Rhode Island.

Jan. 19, 2005.

Kathleen Managhan, Newport, for Plaintiff.

Robert S. Parker, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

WILLIAMS, Chief Justice.

At the crux of this appeal lies the somewhat curious question of "Who owns the Nunnery?" Despite the perhaps pious intentions of the parties, a formerly married couple, they now ask us to sift through a Panamanian corporation, two Bahamian trusts, and a divorce proceeding to determine that very question. More specifically, a Superior Court motion justice dismissed the multi-count complaint brought by the plaintiff, Michele Ritter (plaintiff), alleging partial ownership of real estate in Newport, Rhode Island, against her ex-husband, the defendant, Donald Ritter (defendant), and his Panamanian corporation, Mantissa Investment Corporation (Mantissa). Relying on a 1987 trust document, the plaintiff appeals, alleging that the motion justice misconstrued the nature of her claim in finding that the divorce proceed-ing and the separation agreement barred her suit. Instead, the plaintiff argues that, through a trust, the defendant granted her shares in the corporation and, therefore, co-ownership in the property, during the marriage and that the subsequent divorce did not alter that ownership in any way.

We agree and accordingly vacate the judgment of the Superior Court.

## I

### Facts and Travel

When plaintiff and defendant married in 1982, defendant owned property on Ocean Avenue in Newport, Rhode Island, known as the "Nunnery." The Nunnery served as the family residence during the marriage. In 1986, defendant formed Mantissa, a Panamanian corporation with a principal place of business in Panama and the Bahamas. In December 1987, defendant conveyed the Nunnery to Mantissa through a warranty deed.

In May 1987, before the conveyance of the Nunnery, Worldwide Trust Services Limited, a Bahamian corporation, executed two separate documents on behalf of defendant, both allocating shares of Mantissa in trust. The first document, dated May 8, 1987 (first trust), "exclusively vested" the "beneficial interest in and ownership of the 100 (One hundred) fully paid up shares issued to Bearer represented by share certificate Number 1 of Mantisa [sic] Investment Corporation" with plaintiff and defendant as dual beneficiaries with a right of survivorship. The second document, dated May 10, 1987 (second trust), "exclusively vested" the "beneficial interest in and ownership of One hundred (100) fully paid up Bearer shares numbered 1–100 represented by share certificate No. 1 of Mantisa [sic] Investment Corporation" with defendant as the sole beneficiary.

The plaintiff filed for divorce in October 1999. The parties entered into a property settlement agreement (agreement), after considerable negotiation evidenced by numerous handwritten revisions and deletions, and proceeded on the nominal divorce calendar before a Family Court justice. The defendant agreed to pay plaintiff the sum of $1.5 million, resolving the "rights and obligations growing out of the marriage relation." The agreement included a list of certain property to be divided between the parties, but that list did not address ownership of the Nunnery specifically, nor did it contain a residuary clause assigning property not delineated therein. The only references to the Nunnery in the agreement were: plaintiff agreed to vacate the house by a certain time, furnishings in the home were to be divided equally between the parties, and the house would provide security for the $1.5 million to be paid to plaintiff. Finally, the agreement included a mutual release in full satisfaction of the rights of each of the parties.

Ownership of Mantissa was mentioned at the divorce hearing when the Family Court justice questioned plaintiff:

"The Court: Did I hear that the house was in the name of the corporation?

"The Witness: Yes.

"The Court: Are you a shareholder in that corporation?

"The Witness: I was an officer of that corporation in name."

Neither the court nor counsel asked plaintiff follow-up questions to clarify her testimony about the ownership of Mantissa.

In 2001, plaintiff filed an eleven-count complaint in the Superior Court grounded in law and equity asserting that she retained a one-half interest in the Nunnery based on the first trust. The parties filed cross-motions for summary judgment. The motion justice denied plaintiff's mo-

tion but granted defendant's motion on two grounds: (1) the doctrine of res judicata barred litigation of the ownership of that real estate after the divorce proceeding concluded in Family Court; and (2) the release provisions of the agreement entered into between plaintiff and defendant barred plaintiff's claim. The plaintiff appeals, arguing the motion justice erred by failing to recognize the gravamen of her complaint—that defendant, through the first trust, granted plaintiff a 50 percent share in Mantissa and, therefore, half ownership in the Nunnery irrespective of the divorce proceeding and the release in the agreement. The plaintiff does not appeal the motion justice's denial of her own motion for summary judgment.

## II

## Analysis

In reviewing a motion for summary judgment, this Court examines "the matter *de novo* and [applies] the same standards as those used by the trial court." *Duffy v. Dwyer,* 847 A.2d 266, 268 (R.I. 2004) (quoting *JH v. RB,* 796 A.2d 447, 448 (R.I.2002)). "We will uphold a motion justice's grant of summary judgment '[o]nly when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law * * *.' " *Id.* at 268–69 (quoting *JH,* 796 A.2d at 449). The nonmoving party must prove "by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Id.* at 269 (quoting *Taylor v. Mass. Flora Realty, Inc.,* 840 A.2d 1126, 1129 (R.I.2004)).

## A

## Res Judicata

The primary thrust of the motion justice's ruling was that the previous di-

vorce proceeding barred plaintiff's suit under the doctrine of res judicata. We determine the applicability of res judicata as a matter of law. *See Wright v. Zielinski,* 824 A.2d 494, 497 (R.I.2003).

■ Res judicata "makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein." *ElGabri v. Lekas,* 681 A.2d 271, 275 (R.I.1996). The application of the doctrine is appropriate when there exists "identity of parties, identity of issues, and finality of judgment in an earlier action." *Id.* (quoting *Gaudreau v. Blasbalg,* 618 A.2d 1272, 1275 (R.I.1993)).

■ In determining the scope of the issues to be precluded in the second action, we have adopted the broad "transactional" rule. *Id.* at 276. This rule precludes the re-litigation of "all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." *Id.* (quoting *Manego v. Orleans Board of Trade,* 773 F.2d 1, 5 (1st Cir.1985)). "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations * * *." *Id.* (quoting *Manego,* 773 F.2d at 5).

This is not the first time we have been asked to bar subsequent litigation between a formerly married couple. In *Wright,* 824 A.2d at 495, a husband brought a breach of contract count in a complaint against his ex-wife, after a divorce judgment had been entered in Family Court, based on an alleged violation of the prenuptial agreement. The husband alleged that his ex-wife had violated their agreement by filing

the divorce complaint. *Id.* at 498. Since the husband's claim was a compulsory counterclaim to the wife's complaint in the divorce action, we held res judicata barred the husband's second suit. *Id.* at 497–98.

■ Comparing *Wright* to the case herein, we are reluctant to hold that the divorce proceeding bars plaintiff's current claim. The factual basis for the post-divorce litigation is not the filing of the divorce complaint itself, but rather the creation of a trust more than ten years before the divorce. The plaintiff stresses that her one-half property interest in the Nunnery is not a result of the divorce, but rather had been acquired before the divorce. To bar plaintiff's claim under the transactional rule would require us to define the series of transactions out of which the first action arose as the entire marriage and, thus, all property rights vis-à-vis the ex-spouse could have been litigated in the divorce ending that marriage. Other authorities lead us to the opposite conclusion.

■ The general rule governing this issue is "a judgment or decree in a divorce proceeding is not conclusive of the property rights of the parties, unless such rights were in issue and adjudicated therein, and * * * notwithstanding the prior divorce suit, a husband or wife may litigate with the former spouse any property rights growing out of the former relation." 27C *Corpus Juris Secundum,* § 765 at 436 (1986).

In *Buhrmann v. Buhrmann,* 231 Neb. 831, 438 N.W.2d 481, 483 (1989), the Nebraska Supreme Court addressed ownership of leasehold improvements made to real property on which the parties lived during the marriage. When the parties divorced, the decree and settlement agreement provided the husband with all real property and farm machinery and allowed

the wife to remove any household furnishings and appliances from the family home, but did not mention the leased land or improvements to it, and did not include a residuary clause distributing property not specifically described. *Id.* When the lease expired after the divorce, the husband brought a declaratory judgment action against his now ex-wife alleging he was sole owner of the improvements. *Id.* at 484. The trial justice found that the wife owned a one-half interest in the improvements. *Id.* at 485. Analyzing the res judicata test, the Nebraska Supreme Court affirmed, stating "a decree of dissolution which does not contain a complete adjudication of property rights of the parties does not operate as an absolute bar to the maintenance of an independent action by either of the parties involving such rights." *Id.* at 484. Other jurisdictions have come to similar conclusions.[1] We agree. After the Family Court has entered a divorce judgment, the doctrine of res judicata will not bar a subsequent cause of action litigating the property rights of one of the parties, vis-à-vis the former spouse, when the divorce decree does not contain a complete adjudication of the property rights of the parties. *See id.*

This divorce decree did not contain a complete adjudication of the property rights of the parties, because rights to the Nunnery through ownership of Mantissa were not actually litigated in the divorce proceeding. Much like the leasehold improvements in *Buhrmann*, the agreement, in distributing certain property between the parties, did not directly refer to ownership of the Nunnery. Also, much like *Buhrmann*, the agreement did not include a residuary clause assigning property not expressly described therein. The written agreement, which served as the basis for the divorce hearing, failed to answer the specific question of "Who owns the Nunnery?"

The Family Court justice, however, did attempt to inquire about the Nunnery at the nominal divorce hearing.[2] The brief

---

1. In several community property states, courts have not barred a subsequent cause of action regarding property not disposed of during a previous divorce proceeding. *See, e.g., Tarien v. Katz,* 216 Cal. 554, 15 P.2d 493, 495 (1932) (holding that when a final divorce decree does not dispose of certain community property, the former spouses' rights in relation to that property could be determined in a subsequent action); *Yeo v. Yeo,* 581 S.W.2d 734, 736 (Tex.Civ.App.1979) (holding that a wife could sustain a subsequent action for partition of her ex-husband's military retirement benefits that were not mentioned in the property settlement agreement because "a partition of community property not disposed of in the prior divorce decree is not barred by the doctrine of res judicata"); *Molvik v. Molvik,* 31 Wash.App. 133, 639 P.2d 238, 239 (1982) (holding a former spouse may claim an interest in community property assets that were not distributed in the decree of dissolution in a separate and independent civil action).

In several non-community property states, courts similarly have not barred subsequent litigation after a divorce. *See, e.g., Aoun v. Aoun,* 428 So.2d 707, 708 (Fla.Dist.Ct.App. 1983) (holding "[w]here the issue of rights to personal property is not before the court in the proceeding to dissolve a marriage, the parties are at liberty to litigate the matter in a separate lawsuit"); *Newman v. Newman,* 558 So.2d 821, 823 (Miss.1990) (holding res judicata did not bar subsequent litigation because the wife's property interest in her husband's military retirement pension was not distributed in the divorce decree); *Karney v. Wohl,* 785 S.W.2d 630, 633 (Mo.Ct.App.1990) (holding that when "the dissolution court itself never considered whether [h]usband or [w]ife had ownership interests in Premium Associates, Ltd., * * * a separate proceeding in equity is a proper method by which to obtain judicial consideration of the omitted property").

2. We recently noted the difference between a nominal divorce hearing and a contested divorce with a trial on the merits in *DeLuca v. DeLuca,* 839 A.2d 1237, 1243 (R.I.2004), in

exchange between the hearing justice and plaintiff on that issue ended with her non-responsive "I was an officer of that corporation in name." Neither the court nor counsel asked a follow-up question to clarify whether she was also a shareholder in Mantissa. Furthermore, defendant did not seek to amend the agreement before final judgment was entered to reflect that plaintiff had testified that defendant alone owned the Nunnery.

The failure to clarify ownership of the Nunnery either in the agreement or on the record in the divorce hearing leads us to the conclusion that the question of "Who owns the Nunnery?" was not actually litigated in the divorce action. Thus, the doctrine of res judicata does not bar plaintiff's claim alleging she is a one-half owner of the Nunnery through her alleged ownership of shares of Mantissa because of the first trust.

## B

### Release

 The motion justice also granted defendant's summary judgment motion on the grounds that the release provisions in the agreement barred plaintiff's suit.

Since the agreement was incorporated by reference, but not merged into, the divorce judgment, it "retains the characteristics of a contract." *Riffenburg v. Riffenburg*, 585 A.2d 627, 630 (R.I.1991). In interpreting the release language in the agreement, we will assign the ordinary meaning to that language. *Perry v. Garey*, 799 A.2d 1018, 1023 (R.I.2002). We will find such language ambiguous if, upon considering the agreement as a whole, the language allows for more than one interpretation and, thus, the true intentions of the parties remain uncertain. *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 484 (R.I.2004). "[W]hen ambiguity exists, extrinsic evidence may be introduced to ascertain the executing parties' intent. If a dispute about intent is apparent in the record, then a genuine issue of material fact has been discovered and it may not be decided in a motion for summary judgment." *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379, 381 (R.I.1991).

 The agreement includes two separate provisions with release language. First, section 5, entitled "Release," is a mutual release of all claims to the property of the former spouse, as well as the right to support, maintenance, and alimony.[3]

which we held a motion for a new trial was not the appropriate method for challenging the terms of the nominal divorce decision. Although a contested divorce hearing entails "sift[ing] through questions of fact" and "settl[ing] issues of law," the magistrate in that nominal divorce hearing merely "read into the record an agreement that the parties themselves have reached." *Id.* The relatively limited nature of a nominal divorce hearing militates in favor of our holding that the doctrine of res judicata should bar only issues actually litigated in that proceeding.

3. Section 5 of the property settlement agreement reads in its entirety:
 "MUTUAL RELEASE. The Wife does and shall accept the provisions herein made for her in full satisfaction of her right to the property of the respective parties hereto and in full satisfaction of her right to support and maintenance, and consideration thereof, waives alimony permanently.
 "The Wife hereby covenants and agrees that she will not, at any time hereinafter, contract any debts, charges or liabilities whatsoever for which the Husband or his property or his estate shall or may be or become liable or answerable, and the Wife hereby covenants and agrees that she will at all times hereafter keep the Husband free and harmless from any and all debts or liabilities which may hereafter be incurred by her.
 "The Husband hereby covenants and agrees that he will not, at any time hereinafter, contract any debts, charges or liabilities whatsoever for which the Wife or her

Second, section 14, entitled "Full Disclosure," releases the parties "from any and all claims of every nature which either has had, now has or hereafter may have for or by reason of anything whatsoever from the beginning of the world to the day of date of these presents * * *."

We begin our analysis at a point on which both parties agree. In section 5, plaintiff unquestionably waived all claims to defendant's assets. Thus, if plaintiff now sought rights to support, alimony, or a redistribution of the marital assets, then the release language in the contract would clearly bar her suit. Otherwise, the agreement and divorce judgment would be an empty judicial exercise. The issue before us, however, hinges on whether the agreement bars litigation of property rights, not specifically referred to in the agreement, allegedly acquired during the marriage and kept separate and apart from the divorce.

We previously have held a release provision to be ambiguous despite broad language consistent with a general release. *Farr*, 594 A.2d at 381. That case involved a car accident in which the defendant drove a company car. *Id.* at 380. This Court allowed her to proceed with an uninsured-motorist claim despite the fact she had previously entered into a settlement agreement regarding her workers' compensation claim. *Id.* at 381. In doing so, we said:

"Certain language in the release is consistent with a general release; how-

ever, the document specifically refers only to the workers'-compensation claim. No explicit reference to an uninsured-motorist claim is made. * * * Because of the inclusion in the release of this specific language relating to workers' compensation and the exclusion of any such specific reference to the uninsured-motorists claims, the effect of the release is unclear." *Id.*

Here, the agreement refers to the divorce specifically and omits any reference to ownership of the Nunnery. Thus, in much the same way the reference to the workers' compensation claim could be read to cabin the release in *Farr*, section 5 can be read to cabin the parameters of the release to only the rights and obligations flowing from the divorce despite the broad language of section 14. We therefore hold that the agreement is ambiguous on the question of whether the release language bars plaintiff's current claim.

It is clear from the affidavits submitted by plaintiff and defendant that a dispute exists about the parties' intent in signing the agreement. Thus, in light of the ambiguous language and the dispute about the parties' intent, the defendant's motion for summary judgment should have been denied on this issue as well.

### III

### Conclusion

Since we reverse the decision of the motion justice on both grounds, the defen-

property or her estate shall or may be or become liable or answerable, and the Husband hereby covenants and agrees that he will at all times hereafter keep the Wife free and harmless from any and all debts or liabilities which may hereafter be incurred by him.

"The Husband does and shall accept the provisions herein made for him in full satisfaction of his right to the property of the respective parties hereto and in full satis-

faction of his right to support and maintenance and, in consideration thereof, waives alimony permanently.

"Having made an equitable distribution of their respective properties, both parties agree that no further claim shall be made by either of them under the provisions of *Section 15–5–16.1 of the Rhode Island General Laws of Rhode Island* 1956 [*sic*], as amended, said Section referring to 'Assignment of Property.' "

dant's motion for summary judgment must be vacated because he is not entitled to judgment as a matter of law on the issue of res judicata, and a genuine issue of material fact exists on the issue of the release in the agreement.[4] Put more simply, the question of "Who owns the Nunnery?" cannot be answered today. For the reasons stated here, we vacate the judgment of the Superior Court and remand the case for further proceedings as directed by this opinion. The record shall be remanded to the Superior Court.

---

4. This opinion should not be read as deciding the broader issue of whether the transference of shares of corporate stock to be held in trust for a beneficiary grants that beneficiary a property interest in the assets of that corporation.