April 23, 2026

Asa S. Davis, III   :   No. 2024-10-M.P.

         (WC 23-139)

   v.      :

Wood Estates, Inc., et al.  :


Asa S. Davis et al.   :   No. 2024-87-M.P.

         (WC 20-515)

   v.      :

Town of Exeter et al.  :


NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|                          |   | **Supreme Court**     |
|--------------------------|---|-----------------------|
| Asa S. Davis, III        | : | No. 2024-10-M.P.      |
|                          |   | (WC 23-139)           |
| v.                       | : |                       |
| Wood Estates, Inc., et al. | : |                     |
|                          |   |                       |
| Asa S. Davis et al.      | : | No. 2024-87-M.P.      |
|                          |   | (WC 20-515)           |
| v.                       | : |                       |
| Town of Exeter et al.    | : |                       |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** These consolidated cases came before the Supreme Court on December 10, 2025, pursuant to writs of certiorari issued upon two petitions by the defendant, the Town of Exeter[1] (the town), seeking review of two Superior Court orders, issued in cases both brought by the same plaintiff, Asa S. Davis, III (Davis). The first order denied the town's motion for judgment on the pleadings in WC 20-515 (Due Process case) and the second denied the town's

---

[1] The Town of Exeter is the only defendant that filed a petition for a writ of certiorari in WC 23-139. In WC 20-515, all defendants filed a petition for a writ of certiorari. These defendants include: the Town of Exeter; Maria Lawler, in her capacity as the Treasurer of the Town of Exeter; Michael A. Lefebvre, Calvin A. Ellis, Daniel W. Patterson, Olivia DeFrancesco, and Francis T. Maher, Jr., in their capacities as members of the Town of Exeter Town Council; and Francis P. DiGregorio. We refer to these defendants in WC 20-515 collectively as "the town."

motion to dismiss Davis's claims in WC 23-139 (Adverse Possession case).[2] The town asserts that the Superior Court erred in denying its motions because (1) the claims were barred by *res judicata* and collateral estoppel, (2) the town did not consent to proceeding with separate actions, (3) the disputed area is public property and cannot be adversely possessed, and (4) the Adverse Possession case should have been dismissed pursuant to the doctrine of judicial estoppel. For the reasons set forth herein, we quash the orders of the Superior Court and remand for entry of orders dismissing both cases.

### Facts and Travel

Although many of the facts underlying this case were previously before this Court, we repeat those necessary to the resolution of the issues currently before us. *See Davis v. Town of Exeter*, 285 A.3d 15 (R.I. 2022) (*Davis I*). In 1997, Davis took title to a parcel of real property located in Exeter, Rhode Island. In 2018, Davis began working toward the development of DuTemple Solar, a solar farm he sought to establish on his property. To get town approval for his project, Davis needed to establish, among other things, safe access in and out of his property via a public road. Davis's property has frontage on Ten Rod Road with no driveway or access from the public road. A town map revealed what looked to be a road extending from the

---

[2] WC 20-515 contains several counts, detailed *infra*, and is not limited to due process claims. Davis refers to WC 20-515 as the "Due Process" case, and we adopt that description for ease of reading.

cul-de-sac terminus of a nearby road, Estate Drive, to Davis's property.[3] Contrary to the map, there was no road between the terminus of Estate Drive and Davis's property, only undeveloped woodland. The town considered the area an undeveloped paper street extension of Estate Drive.[4]

In October 2018, Davis filed a master plan application with the town to initiate the development of the DuTemple Solar project on his property. In his application, Davis sought to access his property through the paper street extension of Estate Drive (hereinafter the disputed area). Sometime prior to January 31, 2019, Davis had excavated a clearing and laid down gravel in the disputed area without town permission. When the town learned of Davis's activities, it placed concrete barriers blocking Davis's access to the disputed area. Shortly thereafter, Davis began to remove the barriers, which prompted a cease-and-desist letter from a town official instructing Davis not to remove the barriers.

Throughout several meetings, the Town of Exeter Planning Board (planning board) instructed Davis to resolve the issue of access via Estate Drive with the town council; however, Davis refused. Ultimately, the planning board denied Davis's application, in part due to Davis's lack of proper access to the property. Davis

---

[3] Davis's property does not abut the terminus of Estate Drive.
[4] "A paper street is a street which appears on a recorded plat but which in actuality has never been open, prepared for use, or used as a street." *Davis v. Town of Exeter*, 285 A.3d 15, 18 n.3 (R.I. 2022) (*Davis I*) (quoting *Robidoux v. Pelletier*, 120 R.I. 425, 438 n.2, 391 A.2d 1150, 1157 n.2 (1978)).

appealed the denial of his master plan application to the Town of Exeter Zoning Board (zoning board) on May 1, 2019.

Two days later, Davis filed suit in the Superior Court, asserting that the disputed area was a public road accessible from Davis's property (Road Access case). In his complaint, Davis sought a declaration that the disputed area was a public road (count 1) and injunctive relief to prevent the town from blocking his access to the disputed area (count 2). While the Road Access case was pending, the zoning board unanimously denied Davis's master plan appeal, affirming the planning board's decision to reject his application. On July 19, 2019, Davis appealed the zoning board's decision to the Superior Court (Zoning Appeal case).

On December 8, 2020, while both the Road Access and Zoning Appeal cases were pending, Davis filed another lawsuit against the town (Due Process case).[5] In his complaint, Davis asserted a violation of his due process rights under the Rhode Island Constitution (count 1), violation of the equal access to justice for small businesses and individuals statute, G.L. 1956 chapter 92 of title 42 (count 2), violation of due process rights pursuant to the United States Constitution and 42

---

[5] DuTemple Solar LLC is also a plaintiff in the Due Process case. As noted, *supra* note 1, in addition to the town, the town treasurer, several members of the town council, and DiGregorio were named as defendants. Davis asserts that DiGregorio was a member of the Town of Exeter Planning Board in 2018.

- 4 -

U.S.C. § 1983 (count 3), violation of the Equal Protection and Takings Clauses of the United States Constitution (count 4), and tortious interference (count 6).[6]

Subsequently, on January 13, 2021, the trial justice granted summary judgment to the town in the Road Access case, holding that the disputed area was not a public roadway and that Davis had failed to exhaust his administrative remedies because he never filed the proper permits to develop the disputed area. Davis appealed that decision to this Court. On September 28, 2022, while the Road Access appeal was pending, the Superior Court issued a decision in the Zoning Appeal case affirming the zoning board's denial of Davis's master plan application. Shortly thereafter, on November 18, 2022, Davis petitioned this Court for certiorari review of the Zoning Appeal case, which we denied, thus concluding the travel of the Zoning Appeal.

On December 1, 2022, this Court issued its opinion in the Road Access case, affirming the Superior Court's grant of summary judgment in favor of the town. *Davis I*, 285 A.3d at 23. In *Davis I*, we agreed with the trial justice that the town had not accepted the disputed area as a public road. *Id.* at 21. Specifically, we stated that the disputed area "has never been used, maintained, or improved as a roadway and consisted entirely of wooded vegetation before plaintiff's self-help excavation." *Id.* This Court rejected Davis's contention that the disputed area was a public road,

_____

[6] There is no count 5 listed in the complaint.

- 5 -

stating that "[a]t best, the property south of the cul-de-sac is a paper street, not a public road, and thus may be certified as a public road pursuant to town standards, or abandoned, should the town elect to do so." *Id.* at 22. Ultimately, this Court agreed with the Superior Court that Davis had failed to exhaust his administrative remedies because he failed to apply for permits to excavate the disputed area. *Id.* at 22-23.

On March 21, 2023, after the resolution of the Road Access case, Davis filed another action, the Adverse Possession case, against the town.[7] In his complaint, Davis included claims for adverse possession (count 1), petition to quiet title (count 2), prescriptive easement (count 3), and boundary by acquiescence (count 4). He also sought a declaratory judgment to reform a town map (count 5). In response, the town filed a motion to dismiss based on the doctrines of *res judicata* and collateral estoppel. That same day, the town filed a motion for judgment on the pleadings in the still-pending Due Process case, similarly asserting that Davis's claims were barred by *res judicata*.

The trial justice heard argument on the town's motion for judgment on the pleadings in the Due Process case on July 17, 2023. The town argued that Davis's

---

[7] Davis also named as defendants in the Adverse Possession case: Wood Estates, Inc. and its final shareholders if defunct; John Assalone, as the only known shareholder of Wood Estates, Inc.; and several individual property abutters to the disputed area and Estate Drive.

claims in the Due Process case all arose from the same transaction as the Zoning Appeal, the Road Access case, and other lawsuits Davis had filed. The town pointed out that all of the facts underlying the claims in the Due Process case were known to Davis at the time he filed the Road Access case, and therefore his claims should have been brought simultaneously. The town stated that under the broad transactional rule, claims need not be identical to be barred by *res judicata*; rather, any claims that had or might have been tried in the prior lawsuit are barred.

In response, Davis contended that the town could have moved to consolidate the Road Access and Due Process cases but did not. Davis argued that the issues raised in the Road Access case were narrow, and that the two cases did not come under the same operative facts. In Davis's view, the Road Access case dealt with whether the disputed area between the end of the cul-de-sac and Davis's property was a public roadway, whereas the Due Process case focused on the actions of the town council and planning board.

The trial justice suggested that the town had consented to separate lawsuits by allowing Davis's actions to linger without consolidating them; and thus, under *ElGabri v. Lekas*, 681 A.2d 271 (R.I. 1996),[8] it could not invoke the doctrine of *res judicata*. The town denied that it had consented to the lawsuits and reiterated that it

---

[8] In *ElGabri v. Lekas*, 681 A.2d 271 (R.I. 1996), discussed *infra*, this Court adopted the Restatement (Second) *Judgments* § 26(1)(a), which specifies that *res judicata* is not applicable when a defendant consents to split claims. *ElGabri*, 681 A.2d at 277.

had met all three elements of *res judicata*. The trial justice ultimately denied the town's motion for judgment on the pleadings in the Due Process case without further explanation. An order reflecting the denial of the town's motion was entered on August 24, 2023. The town later petitioned this Court for a writ of certiorari, which we granted.

On August 31, 2023, the trial justice heard argument on the town's motion to dismiss the Adverse Possession case. The town argued that, because this Court held in *Davis I* that no one had used the disputed area until 2018, it would be impossible for Davis to prove ten years of use, an essential element of his adverse possession claim. Specifically, the town explained that under the doctrine of collateral estoppel, Davis was barred from relitigating the ownership and control of the disputed area because the issue had already been decided by this Court in *Davis I*.

The town next argued that *res judicata* barred Davis's claims entirely. The town asserted that every claim before the Superior Court in the Adverse Possession case could have been brought in Davis's prior lawsuits, as they arose from the same transaction or series of transactions. The town pointed out that the crux of both the Road Access case and the Adverse Possession case was a dispute over the legal status of Estate Drive. Further, the town reiterated that in both the Road Access and Zoning Appeal cases, the issues of road access and ownership had already been litigated.

Third, the town argued that the disputed area is public property and therefore cannot be adversely possessed. Further, the town argued that this Court's holding in *Davis I* solidified that the disputed area was public property, dedicated to the town for future development. The town stated that no one had ever submitted a permit to open the disputed area as a public roadway and that the town had never abandoned it. Until either of those two things happened, the town argued, the disputed area remained public property which could not be adversely possessed.

Lastly, the town argued that Davis should be judicially estopped from raising his claims because they contradicted his previous position in the Road Access case. The town contended that Davis had "completely and totally contradicted his allegations from the prior lawsuit," and because the previous facts were accepted and established by a final judgment, it would be appropriate for the court to invoke judicial estoppel.

In response, Davis argued that both the town's collateral estoppel and *res judicata* arguments should fail because the Road Access case was limited only to the issue of whether the disputed area was a public road. In Davis's view, by arguing that the disputed area was not a public roadway, the town had essentially disclaimed ownership of the disputed area. According to Davis, when this Court agreed with the town that the disputed area was not a public roadway, that gave Davis the opportunity to argue adverse possession. Davis argued that, because he had not

previously argued adverse possession in either the Road Access or Zoning Appeal cases, *res judicata* and collateral estoppel were not applicable to the Adverse Possession case.

Further, Davis asserted that he was not required to file inconsistent and alternative pleadings in the Road Access case. Davis contended that to argue that the disputed area was a public street, but that in the alternative Davis had adversely possessed the disputed area, would be "tricky" because the court looks at all the allegations and accepts them in good faith. According to Davis, Rule 8(e) of the Superior Court Rules of Civil Procedure allows for, but does not require, inconsistent alternative pleadings. Under his interpretation of the rule, Davis argued that he was not obligated to bring his alternative claims in the Road Access case.

Davis then expanded on his argument that, because this Court held that the disputed area was a paper street, it was not public property. Davis agreed with the town that public property cannot be adversely possessed, but asserted that a paper street is not public property because it has not been accepted by the town. Because, according to Davis, the town had not accepted the disputed area, it was "up for grabs." Davis argued that, although there was evidence of his use of the disputed area in the Road Access case, the assertions in each case did not contradict each other or overlap. Although Davis conceded that use of the disputed area was at issue

in the Road Access case, he also asserted that the other elements of adverse possession were not.

Next, Davis argued that, because the town had failed to assert that the disputed area was public property in the Road Access case, that issue was waived. Davis alleged that the town had gone to "great extents" in the prior case to establish that the area was not a roadway, which in Davis's view contradicted the town's position that the disputed area was public property. Davis stated that this Court's opinion made clear to the town the potential consequences of arguing that it had not accepted dedication of the disputed area; and, in his view, one consequence was his adverse possession claim.

The trial justice asked whether Davis was required to have pled his alternative claims in the prior litigation. In response, Davis reiterated his position that he could have permissibly pled those claims but was not required to do so. Davis stated that failing to present an alternative argument did not preclude him from raising it later and that raising inconsistent statements would dilute the claims' respective strength. The trial justice asked Davis if this Court's decision in the Road Access case opened the door to the adverse possession claim, which Davis answered in the affirmative.

The trial justice then questioned what constituted the transaction or series of transactions under the transactional rule. In response, Davis stated that the trial justice should consider "whether or not the transaction that was the subject of the

- 11 -

initial complaint, the road case, was broad enough to encompass and include the concept of adverse possession." Davis went on to state that the Road Access case could not have been broad enough to encompass his adverse possession argument because that claim would have been inconsistent. In closing, Davis disagreed with the town's contention that this Court had determined that he had not used the road for ten years, but asserted separately that under the motion to dismiss standard, Davis's present allegations of exclusive use of the disputed area were "cast in stone."

The town responded, arguing that Davis's description of the motion to dismiss standard was inaccurate because he was estopped from asserting facts contradictory to those asserted in the prior litigation. Further, the town argued that its position on whether the disputed area was public property had remained consistent throughout the entirety of the litigation. The town clarified its position, explaining that the disputed area was dedicated and held in public trust until someone files a proper application to open and improve it as a road. The town pointed out that this Court stated that the town had the option to abandon the disputed area, which by implication meant the town must own it.

Lastly, the town pointed out that, in its view, Davis had essentially admitted that the issues in both cases were the same. The trial justice clarified that Davis conceded only that the use of the disputed area was at issue in both cases, with which Davis agreed. The town responded that, even if that were the case, this Court had

already determined that the disputed area had never been used, thus precluding Davis from proving an element essential to each of his claims. With that, the hearing adjourned.

On November 15, 2023, the trial justice issued a bench decision denying the town's motion to dismiss the Adverse Possession case. The trial justice held that collateral estoppel did not bar Davis's adverse possession claim. The trial justice held that Davis could still prevail in his adverse possession claim because "the public's right-of-way in a paper street can be adversely possessed as long as the [t]own has not accepted the incipient dedication by action or by public use * * *." Therefore, the trial justice determined that the application of collateral estoppel to the Adverse Possession case would be inappropriate.

The trial justice next held that *res judicata* did not bar Davis's action. First, the trial justice held that there was an identity of the parties between the Road Access case and the Adverse Possession case as to the town, some of the individual defendants, and Davis. The trial justice next determined that, although both cases arose from the use of the disputed area, the legal analysis and operative facts of the two cases were vastly different. The trial justice reasoned that the underlying facts were dissimilar, Davis's claims were "not an attempt to repackage the facts under a new legal theory," and that the claims would not have "constitute[d] a convenient trial unit." Moreover, the trial justice concluded that an application of *res judicata*

would "lead to an unjust or unfair result," leaving the issue of the right to use private property undetermined. Accordingly, the trial justice denied the town's motion to dismiss. She did not address the town's judicial estoppel argument. On January 9, 2024, an order was entered denying the town's motion.

The town then petitioned this Court for a writ of certiorari, which we granted, consolidating the matter with the Due Process case. Before this Court, the town asserts that the Superior Court erred: (1) by failing to dismiss the complaints pursuant to *res judicata* and collateral estoppel; (2) in concluding that the town had consented to proceeding with separate actions; (3) in failing to dismiss the Adverse Possession Case because public property cannot be adversely possessed; and (4) in failing to dismiss the Adverse Possession case pursuant to the doctrine of judicial estoppel.

**Standard of Review**

"[T]his Court limits its review on certiorari to examining the record to determine if an error of law has been committed." *Mile v. Kirkbrae Country Club*, 331 A.3d 1003, 1006 (R.I. 2025) (quoting *Noonan v. Sambandam*, 296 A.3d 670, 673 (R.I. 2023)). "The sole function of a motion to dismiss is to test the sufficiency of the complaint." *Maltais v. Maltais*, 306 A.3d 449, 452 (R.I. 2024) (quoting *Jenkins v. City of East Providence*, 293 A.3d 1267, 1270 (R.I. 2023)). "In passing on a Rule 12(b) dismissal, this Court applies the same standard as the trial justice."

- 14 -

*Id.* (quoting *Jenkins*, 293 A.3d at 1270). "When reviewing the decision of a hearing justice on a motion for judgment on the pleadings pursuant to Rule 12(c), we utilize the Rule 12(b)(6) motion-to-dismiss test." *Houle v. Liberty Insurance Corporation*, 271 A.3d 591, 593 (R.I. 2022) (quoting *Nugent v. State Public Defender's Office*, 184 A.3d 703, 706 (R.I. 2018)).

"[W]e confine ourselves to the four corners of the complaint, assume that the allegations set forth are true, and resolve any doubts in favor of the complaining party." *Montaquila v. Flagstar Bank, FSB*, 288 A.3d 967, 971 (R.I. 2023) (quoting *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017)). "[A]llegations that are more in the nature of legal conclusions rather than factual assertions are not necessarily assumed to be true." *Rosario v. Nationstar Mortgage, LLC*, 332 A.3d 173, 177 (R.I. 2025) (quoting *DiLibero v. Mortgage Electronic Registration Systems, Inc.*, 108 A.3d 1013, 1016 (R.I. 2015)). "A motion to dismiss may be granted only if it appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts." *Id.* (quoting *Narragansett Electric Company v. Minardi*, 21 A.3d 274, 278 (R.I. 2011)).

"Ordinarily, when ruling on a motion to dismiss brought under Rule 12(b)(6) or Rule 12(c), a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Montaquila*, 288 A.3d at 971 (quoting *Chase*, 160 A.3d

at 973). However, "we have acknowledged a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Rosario*, 332 A.3d at 176-77 (quoting *EDC Investment, LLC v. UTGR, Inc.*, 275 A.3d 537, 542-43 (R.I. 2022)).

## Discussion

### *Res Judicata*

Before this Court, the town argues that *res judicata* bars Davis's Adverse Possession and Due Process cases, because they arose from the same transaction as both the Road Access and Zoning Appeal cases, which both ended in final judgments on the merits. The town emphasizes that both the Due Process case claims and the Adverse Possession case claims could have been properly raised by Davis in the Road Access case and are thus barred by *res judicata*.

In response, Davis argues that the Road Access case "gives rise" to the Adverse Possession case and concerns a different issue. Davis asserts that his Adverse Possession case does not put the Road Access case at risk of inconsistency, because the two share a pivotal relationship. Davis also asserts that the cases have "markedly different issues, times, spaces, and origins." Further, Davis contends before this Court that forcing him to plead adverse possession alternatively in the

- 16 -

Road Access case would "entrap [his] credibility" as the claims could not have been brought simultaneously in good faith.

"*Res judicata* serves as a bar to a second cause of action where there exists: (1) identity of parties; (2) identity of issues; and (3) finality of judgment in an earlier action." *Runey v. Faring*, 336 A.3d 16, 20 (R.I. 2025) (quoting *Mello v. Killeavy*, 242 A.3d 53, 56 (R.I. 2020)). To determine "the scope of the issues to be precluded in the second action, we have adopted the broad transactional rule." *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1036 (R.I. 2017) (quoting *Ritter v. Mantissa Investment Corp.*, 864 A.2d 601, 605 (R.I. 2005)). "This rule precludes the re-litigation of all or any part of the transaction, or series of connected transactions, out of which the first action arose." *Id.* (brackets omitted) (quoting *Ritter*, 864 A.2d at 605). We determine what comprises a single transaction or series of transactions "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* (deletion omitted) (quoting *Ritter*, 864 A.3d at 605).

"[A] party defeated in one action cannot maintain a second action based on a ground which could properly have been, but was not, set forth and relied upon in the former action." *ElGabri*, 681 A.2d at 275 (quoting *Wholey v. Columbian National Life Insurance Co.*, 69 R.I. 254, 262, 32 A.2d 791, 795 (1943)). Under *res judicata*,

the expectation is that "parties who are given the capacity to present their entire controversies shall in fact do so." *Id.* at 276 (quoting 1 Restatement (Second) *Judgments* § 24 cmt. a). Failure to adhere to these principles "extinguish[es] a plaintiff's claim against a defendant even though the plaintiff would be prepared in a second action to present evidence or grounds or theories of the case not presented by the plaintiff in the first action, or to seek remedies or forms of relief not demanded in that action." *Id.*

There is no meaningful dispute as to whether the first (identity of the parties) and third (finality of judgment) elements of *res judicata* have been met. Identity of parties is met because Davis and the town were opposing parties in the previous actions. The third element is also met because final judgment entered in both the Road Access case and the Zoning Appeal. *See Davis I*, 285 A.3d at 23. Accordingly, we place our focus on the second element: identity of the issues. Davis asserts, simultaneously, that the Road Access case gave rise to the Adverse Possession case but also that the cases are markedly different in time, space, and origin. We are not persuaded.

Contrary to Davis's argument, the claims presented in the Adverse Possession, Due Process, and Road Access cases "necessarily rely upon the same bricks and mortar." *ElGabri*, 681 A.2d at 277. All of Davis's claims arise from his insistence that he had a right to access the disputed area. The three actions, although

- 18 -

based on different legal theories, are "strikingly similar." *Id.* at 278. In *ElGabri*, this Court rejected a plaintiff's argument that causes of action not raised in his federal court litigation, which was fully adjudicated prior to a state court action, should survive *res judicata*. *Id.* at 280. In determining that the plaintiff's claims were precluded, this Court explained that the plaintiff "certainly could have included" his additional claims in his federal court lawsuit. *Id.* at 278. Because the plaintiff chose not to do so, his state court action was barred by *res judicata*. *Id.* at 280.

Similarly, all of Davis's claims in the Adverse Possession case could have been raised in the Road Access case. At the hearing on the town's motion to dismiss, Davis stated that he "could have pled [his adverse possession claim] in the alternative, permissibly, but he was not obligated to, and there is no law that says that if you fail to plead an alternative pleading or an inconsistent statement, that you're waived from that." Davis maintains that position before this Court, directing our attention to the Restatement (Second) *Judgments* § 24 and Rule 8(e)(2) of the Superior Court Rules of Civil Procedure, which in his reading provide that inconsistent pleadings are "essentially optional."

Davis is correct; he is not required to make alternative pleadings. However, as established unequivocally by this Court, a litigant chooses not to do so at his or her own peril. *See ElGabri*, 681 A.2d at 280 ("[The plaintiff] should have undertaken to join all of his related transactional claims in one judicial proceeding. He did not,

and once his federal action was fully litigated * * *, he was thereafter foreclosed in his state action from going forward with any cause of action that could have been joined in his previously litigated federal action."); *Bossian v. Anderson*, 991 A.2d 1025, 1027 (R.I. 2010) ("Trial on an installment-plan basis cannot be countenanced.") (deletion omitted) (quoting *Thomas v. Ross*, 477 A.2d 950, 953 (R.I. 1984)). Davis's assertion that the Restatement (Second) of Judgments and the Rules of Civil Procedure save his subsequent claims is without merit.[9]

Davis's contention that the Road Access case gave rise to the Adverse Possession case is also without merit. Under the transactional rule, all of Davis's

---

[9] In fact, a closer reading of the comments to which Davis directs us warns litigants against taking Davis's course of action. Restatement (Second) *Judgments* § 24, comment c states, in pertinent part:

> "That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."

Restatement (Second) *Judgments* § 24, comment h provides that the

> "plaintiff is under some compulsion not to split a claim. * * * This still leaves the possibility that a plaintiff, actually having a single claim but mistakenly believing that he has a number of them, may commence a limited lawsuit and then run afoul of the rule against splitting. A plaintiff must take this risk into account in framing his action."

claims stemming from Davis's access to the disputed area are extinguished "even though [he] would be prepared in a second action to present evidence or grounds or theories of the case not presented * * * in the first action, or to seek remedies or forms of relief not demanded in that action." *ElGabri*, 681 A.2d at 276. Davis cannot revive his prior action by repackaging the same facts to suit an adverse possession claim. *See Mills v. Toselli*, 916 A.2d 756, 757 (R.I. 2006) (mem.) ("The plaintiff cannot, however, resurrect her action by craftily characterizing defendant's remarks as 'acts,' or by slyly substituting a slander claim with one for tortious interference.").

*Res judicata* applies equally to the Due Process case which also relies on facts that developed as a direct result of Davis's mission to access the disputed area. Several of the facts that make up the Due Process complaint, such as Davis's alleged access to the disputed area and the town's sending of a cease-and-desist letter, appear on the face of the Road Access complaint.[10] Although Davis did not allege all of the facts contained in the Due Process complaint in the Road Access complaint, he certainly could have done so. *See Bossian*, 991 A.2d at 1027 ("In spite of plaintiff's assertion that the specific * * * allegations against defendant have not been *authoritatively* and *legally* ruled upon, it is absolutely clear that the fourth count arose from the same transaction that was at issue in the previous litigation, and it could have been raised therein.") (brackets and internal quotation marks omitted).

---

[10] Notably, Davis did raise constitutional violations in the Zoning Appeal case.

Accordingly, Davis fails to persuade us that his claims survive the preclusive effects of *res judicata*.

**Acquiescence**

There is an exception to *res judicata* when "the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." *ElGabri*, 681 A.2d at 277 (brackets omitted) (quoting 1 Restatement (Second) *Judgments* § 26(1)(a)). If a "plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action." *Id.* (emphasis omitted) (quoting 1 Restatement (Second) *Judgments* § 26 cmt. a). A defendant's failure to object to a plaintiff's separate actions "is effective as an acquiescence in the splitting of the claim." *Id.* (quoting 1 Restatement (Second) *Judgments* § 26 cmt. a).

At the conclusion of the hearing below, the trial justice denied the town's motion for judgment on the pleadings in the Due Process case without explanation. Although she did not directly indicate so, the hearing transcript suggests that the acquiescence exception to *res judicata* may have been the basis of the trial justice's decision. The town argues, as it did below, that it did not consent to separate litigation in Davis's claims. Before this Court, the town asserts that, because it pled

*res judicata* as an affirmative defense, it did not acquiesce to Davis's separate lawsuits.[11]

In *ElGabri*, this Court held that the defendants' raising of *res judicata* as an affirmative defense in their answer "was sufficient to rebut [the plaintiff]'s appellate allegation that [the defendants] had acquiesced in the splitting of his state court claim." *ElGabri*, 681 A.2d at 277. Identically, here, the town asserted *res judicata* in its first responsive pleading in the Due Process case, raising the affirmative defense in their answer. Therefore, the town has not acquiesced to the splitting of Davis's claims. To the extent that the trial justice may have based her decision on acquiescence, the denial of the town's motion was in error.

We are of the opinion that Davis was required to bring all his related claims in one proceeding. Because he failed to do so, the conclusion of the Road Access case bars both the Due Process and Adverse Possession cases. The acquiescence exception to *res judicata* does not apply. Accordingly, the trial justice erred in denying both the town's motion to dismiss the Adverse Possession case and its motion for judgment on the pleadings in the Due Process case.

---

[11] Davis did not meaningfully argue, before this Court or below, that the town had acquiesced to separate lawsuits. Davis did briefly state at the hearing below that the town could have, but did not, move to consolidate the matters.

- 23 -

## Collateral Estoppel

"Under the doctrine of collateral estoppel, 'an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings.'" *Paolino v. Commonwealth Engineers & Consulting, Inc.*, 318 A.3d 209, 215 (R.I. 2024) (quoting *Commercial Union Insurance Company v. Pelchat*, 727 A.2d 676, 680 (R.I. 1999)). "The application of collateral estoppel requires '(1) an identity of issues; (2) a final judgment on the merits; and (3) an establishment that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action.'" *Id.* (quoting *Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO v. McGovern*, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974)).

The second element, identity of issues, is divided "into three factors: (1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided." *Paolino*, 318 A.3d at 215 (quoting *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Company of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I. 1994)). "An issue is actually litigated when it is properly raised, submitted for determination, and actually determined." *Id.* "An issue is necessarily decided when it is essential to the judgment, rather than being resolved in mere dicta." *Id.*

- 24 -

Before this Court, the town contends that in the Road Access case, the legal status of the disputed area was actually litigated and decided. The town points to several findings of fact made by the Superior Court in the Road Access case that, it contends, cannot be relitigated in the Adverse Possession case: (1) that the developer of the area intended the disputed area to be a paper street; (2) that aerial photos showed that the disputed area was undeveloped from 1999 until 2018; and (3) that from 1988 until 2018 the disputed area was not publicly accessible. Further, the town points out that, in *Davis I*, this Court determined the disputed area "has never been used, maintained, or improved as a roadway and consisted entirely of wooded vegetation before plaintiff's self-help excavation." (Quoting *Davis I*, 285 A.3d at 21.) Accordingly, the town argues that Davis is estopped from relitigating these factual findings, and that because ownership and use of the disputed area has already been litigated, decided, and affirmed by this Court on appeal, Davis's adverse possession claim fails as a matter of law.

In response, Davis argues that collateral estoppel is not applicable to the Adverse Possession case because his claims are "harmonious" with the Road Access case, and therefore pose no risk of inconsistent judgments. In his briefing before this Court, Davis does not directly address the town's argument that the facts it specified are precluded from relitigation. Rather, according to Davis, the town's prior arguments "made clear" that the land was "rural, wild and remote, wooded,

unimproved, never accepted and essentially a 'No Man's Land,'" thus exposing the disputed area to his adverse possession claim.

In assessing the town's collateral estoppel argument below, the trial justice determined that there was no identity of issues because the Road Access case focused on whether the town had accepted the disputed area as a public road by public user. The trial justice reasoned that the issue of whether the general public had used the road for the statutory period was markedly different from the issue of whether Davis had exclusively used the land for the statutory period. Further, the trial justice stated that this Court's determination that the disputed area was a paper street was not determinative of or identical to the issue of whether Davis had adversely possessed the disputed area.[12]

While the trial justice correctly stated that the Road Access case focused on whether the public utilized the disputed area, she incorrectly determined that there was no identity of issues.[13] The town contends, correctly, that the issue of use of the disputed area was litigated in the Road Access case. In *Davis I*, this Court determined that the disputed area "ha[d] never been used, maintained, or improved as a roadway and consisted entirely of wooded vegetation" until Davis's excavation

---

[12] This Court determined that the disputed area was "[a]t best * * * a paper street * * *." *Davis I*, 285 A.3d at 22 (emphasis added).

[13] As in our *res judicata* discussion *supra*, there is no dispute as to the other two elements of collateral estoppel: finality of judgment and identity of parties. We limit our analysis to the identity of issues.

in 2018. *Davis I*, 285 A.3d at 21.  In so holding, Davis's use was actually litigated and necessarily decided.  Contrary to Davis's interpretation, our finding of non-use did not open the door to his adverse possession claim.  Rather, our prior determination precludes Davis's assertions that he cleared and exclusively utilized the disputed area as early as 1997 and made significant use of the area until 2019. *See Plunkett v. State*, 869 A.2d 1185, 1188 (R.I. 2005) ("Although issue preclusion generally operates to bar relitigation of only those issues that *actually* were decided in the prior lawsuit, it may even apply when the second lawsuit asserts a different claim.") (quoting *Foster-Glocester Regional School Committee v. Board of Review*, 854 A.2d 1008, 1014 n.2 (R.I. 2004)).  Davis's arguments are without merit and do not insulate his new claims from the preclusive effects of collateral estoppel.

Accordingly, the trial justice erred in determining Davis's claims were not barred by collateral estoppel.  Davis is estopped from relitigating the use of the disputed area, and as a result his adverse possession claim fails as a matter of law.

**Judicial Estoppel**

The doctrine of judicial estoppel is "driven by the important motive of promoting truthfulness and fair dealing in court proceedings." *D & H Therapy Associates v. Murray*, 821 A.2d 691, 693 (R.I. 2003).  "Ordinarily, the application of estoppel is an extraordinary form of relief, that 'will not be applied unless the equities clearly are balanced in favor of the party seeking relief.'" *Gaumond v.*

*Trinity Repertory Company*, 909 A.2d 512, 519 (R.I. 2006) (brackets omitted) (quoting *Southex Exhibitions, Inc. v. Rhode Island Builders Association, Inc.*, 279 F.3d 94, 104 (1st Cir. 2002)). "'[J]udicial estoppel focuses on the relationship between the litigant and the judicial system as a whole' rather than solely on the 'relationship between the parties.'" *Id.* (quoting *D & H Therapy Associates*, 821 A.2d at 693). In determining whether to apply judicial estoppel, this Court must consider "whether the 'party seeking to assert an inconsistent position would derive an unfair advantage if not estopped.'" *Id.* (deletion omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

Davis previously claimed in the Road Access case, in his verified complaint, that he, neighbors, and the public regularly used the disputed area. However, in the Adverse Possession case, Davis asserts that he exclusively utilized and improved the disputed area, in direct contradiction of his previous allegations. The town argues that, because these positions are irreconcilable, Davis should be judicially estopped from pursuing his Adverse Possession case. We agree.

The town raised the doctrine of judicial estoppel before the trial justice in the proceedings below, arguing that, under *Gaumond*, Davis should be barred from raising his contradictory arguments to protect the integrity of the judicial process. Although he does not clearly address the town's judicial estoppel argument in his briefing before this Court, in his memorandum below, Davis asserted that because

- 28 -

his prior arguments in the Road Access case did not prevail, the Adverse Possession case was not subject to judicial estoppel.[14]  The trial justice did not address judicial estoppel at either the hearing on the motion to dismiss or in her decision.  We deem that declining to do so constituted error.

In the Adverse Possession case, Davis asserts claims that plainly contradict his prior sworn allegations in the Road Access case, facts which he may not now ignore. *See D & H Therapy Associates*, 821 A.2d at 694 ("Having eaten his cake, defendant may not renounce its calories.").  This Court employs judicial estoppel "when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Gaumond*, 909 A.2d at 520 (quoting *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987)).  Davis's new claims are in direct contradiction of the facts he previously alleged, and it would be unfair to permit him to pursue them.[15]

---

[14] In his briefing before this Court, Davis cites *New Hampshire v. Maine*, 532 U.S. 742 (2001), in support of his contention that the town should be judicially estopped from asserting ownership of the disputed area.  However, Davis does not argue before us that judicial estoppel should not be applied to his own claims.

[15] We reiterate our position that Davis could have, and should have, pled his adverse possession claims in the alternative in the Road Access case.  As the Superior Court Rules of Civil Procedure make clear, Davis and all litigants are permitted to raise inconsistent alternative pleadings. Super. R. Civ. P. 8(e)(2).  However, a litigant may not repackage previously litigated facts and positions for a second, more favorable bite at the apple. *See D & H Therapy Associates*, 821 A.2d at 694.  Davis asserts no tenable reason he could not have pled that the disputed area was a public road, but

- 29 -

We deem Davis's position in the Adverse Possession case wholly inconsistent with his prior position in the Road Access case. Davis's sworn declaration that he, neighbors, and the public regularly accessed the disputed area is misleading when compared with his subsequent claims that he exclusively used and maintained it. Davis would derive an unfair advantage if allowed to proceed. *See New England Property Services Group, LLC v. Vermont Mutual Insurance Company*, 331 A.3d 730, 737 (R.I. 2025) ("The plaintiff's actions make clear its willingness to use every judicial avenue available to it, irrespective of efficient conflict resolution. The plaintiff is searching for, and would derive an unfair advantage if it were permitted to now claim that the appraisal proceeding is not an arbitration after previously attempting to confirm the appraisal award in the Superior Court under that same theory.") (footnote omitted).

## Conclusion

For the reasons set forth herein, we quash the orders of the Superior Court. The record will be remanded to the Superior Court for entry of orders dismissing both cases.

Justice Goldberg participated in the decision but retired prior to its publication.

---

that if it were not, he had adversely possessed it. Doing so would have comported with the longstanding principles underlying both the doctrines of judicial estoppel and *res judicata*.

- 30 -

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Asa S. Davis, III v. Wood Estates, Inc., et al.<br>Asa S. Davis et al. v. Town of Exeter et al. |
| **Case Number** | No. 2024-10-M.P. (WC 23-139)<br>No. 2024-87-M.P. (WC 20-515) |
| **Date Opinion Filed** | April 23, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>John O. Mancini, Esq.<br>For Defendant:<br><br>Kathleen M. Daniels, Esq.<br>Kenneth J. Sylvia, Esq. |